BAILEY *v.* SANDERS.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 271. Submitted April 30, 1913.—Decided May 12, 1913.

On the facts disclosed by the record in this case, the finding by the Land Department that there was an agreement to convey by the homesteader was not arbitrary or unsupported by evidence.

While, in a contest before the Land Department, the decision should be confined to the questions put in issue by the parties, there is no objection to the decision of other questions to which the hearing was extended by consent of the parties.

Under §§ 2289, 2290, Rev. Stat., the right to enter a homestead is for the exclusive benefit of the entryman who cannot alienate before the claim is perfected; nor is this affected by the act of March 3, 1891, giving the right to commute the entry.

Entering into a forbidden agreement to alienate a homestead entered under §§ 2289, 2290, Rev. Stat., ends the right of the entryman to make proof and payment and renders him incompetent to further proceed with his entry. *Hafemann* v. *Gross,* 199 U. S. 342.

177 Fed. Rep. 667, affirmed.

THE facts, which involve the right of a homesteader to alienate the land he seeks to enter before he has finally perfected the entry, are stated in the opinion.

*Mr. Douglas W. Bailey pro se* and *Mr. Henry H. Gilfrey* for appellant.

No appearance for appellee.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a suit to determine which of two claims to a tract of land in the State of Idaho is the better one. The tract is within the ceded portion of the Nez Perce Indian Reservation, which was brought within the operation of the homestead law by the act of August 15, 1894, 28 Stat. 286, 332, c. 290. Bailey, the plaintiff, claims as the grantee once removed of William W. Hately, who made a preliminary entry of the tract in 1899, commuted the entry in 1901, and received the usual receipt and certificate. Sanders, the defendant, claims under an entry subsequently made and upon which he has obtained a patent. The real controversy is over the effect to be given to certain contest proceedings in the Land Department which resulted in the cancellation of Hately's entry and in the allowance of that of the defendant. In his bill of complaint the plaintiff sets forth all or the major part of the proceedings and evidence in the contest and calls in question the cancellation of Hately's entry. A demurrer to the bill was sustained by the Circuit Court and the bill was dismissed. The decree was affirmed by the Circuit Court of Appeals, 177 Fed. Rep. 667, and the plaintiff brings the case here.

We shall refer briefly to such parts only of the case made by the bill and the exhibits as have a direct bearing on the questions requiring decision by us.

As soon as Hately's entry was commuted he conveyed the land to one Beach, as the result of negotiations with Bailey, the plaintiff, who claimed to be acting for Beach.

The contest against the entry originated in a charge preferred by Sanders to the effect that a fraud had been perpetrated in obtaining the conveyance to Beach and that Bailey had for a long time been resorting to irregular methods to secure the land. The charge was somewhat vaguely stated and pointed more to a fraud on Hately than to one on the United States, but the Commissioner of the General Land Office regarded it as requiring investigation and ordered a hearing in the local office, of which Hately, Beach and Sanders were to be notified and in which each was to be heard, "in order that all the facts in the case might be brought out." The hearing was had, Hately and Sanders appearing in person and Beach being represented by Bailey. Upon the evidence adduced the local officers found, among other things, that two or three months before Hately made his commutation proof an agreement was made between him and Bailey whereby the latter was to pay the expense of the commutation and Hately was to convey the land to Bailey for an additional consideration of $600 when the commutation was effected, and that the conveyance to Beach was made at Bailey's instance in pursuance of the agreement. By successive appeals the contest was carried before the Commissioner of the General Land Office and the Secretary of the Interior, with the result that the finding of the local officers was sustained and the entry cancelled because of the agreement to convey. The conveyance from Beach to Bailey was made after the contest was heard by the local officers and while it was pending on appeal before the General Land Office.

1. It is insisted that no evidence was adduced in the contest tending to show the making of such an agreement as was described in the finding of the Land Department, and therefore that the cancellation of the entry was wholly arbitrary and unauthorized. The evidence is set forth in one of the exhibits to the bill, and it there appears that

Hately gave the following testimony: "Q. When did you first come to know Mr. Bailey, or where did you first meet him? A. Some time in January, 1901, Woodland, Idaho [the entry was commuted in March following]. Q. What, if any, conversation did he have with you on that occasion concerning the land in controversy? A. He didn't say much about it. . . . Q. What did Mr. Bailey say to you about proving up on your land, assisting you to prove up, if anything at that time? A. He said he had some folks that wanted a piece of land in the timber. Well, he wanted a deed to the place, and I told him if I had to make the deed what it would take to get the land. Q. How much did you tell him you would take? A. I told him it would take $600 besides the expense. Q. Were you living upon your land at that time? A. Yes. Q. Was there any special agreement made by you and Mr. Bailey at your house or place? A. He drawed up some kind of an agreement, but I don't know what it was. Q. Did he read it to you and inform you of the purport of the paper? A. Yes. Q. Did Mr. Bailey subsequently have you appear before some officer in order to consummate your final proof of the land in question? A. He did. Q. When did Mr. Bailey have you execute this deed which has been offered in this case, marked Exhibit 'A' [deed to Beach] alleged to have been signed by yourself and wife? A. Some time in March, 1901." There was also testimony to the effect that shortly before the hearing Beach disclaimed any personal interest in the land; and in the decision of the local officers, which is an exhibit to the bill, it is stated that the commutation price was paid by Bailey, and that, although present at the hearing, he refused to be sworn. In these circumstances we think it cannot be said that the finding of the Land Department respecting the agreement to convey was arbitrary or without evidence to support it.

2. Another objection urged against the action of the Land Department is that the charge upon which the hear-

ing was ordered did not clearly or certainly assail Hately's entry on the ground that, before perfecting it, he had entered into a prohibited agreement to convey the land to another. It is true that the charge was vaguely stated, but it does not appear that any prejudice resulted from this. The principal testimony relating to the agreement was given by Hately, and no objection was made to his being interrogated on that subject. Nor was any effort made to weaken that part of his testimony by cross-examination. Bailey, with whom Hately said the agreement was made, represented Beach at the hearing and could have contradicted Hately's testimony, if it was not true, but he did not attempt to do so. True, there is in the bill an allegation that the local officers refused to permit Beach to adduce evidence in rebuttal, the nature of which is not stated in that connection, but it appears from the exhibits to the bill that this evidence related to a matter which is of no moment here, namely, the reason why Beach had not paid a draft given by Bailey to Hately for the deed from the latter. The real situation, then, in respect of the proof of the prohibited agreement is that it was introduced without objection, in circumstances where it could have been controverted if untrue, and that no attempt was made to dispute it. This being so, the present objection must fail as did a similar one in *Lee* v. *Johnson,* 116 U. S. 48. There an unsuccessful homestead claimant, whose entry had been cancelled as the result of a contest before the Land Department, sought to charge the successful claimant, whose entry had been passed to patent, as a trustee of the title. The contest before the Land Department had been initiated by a charge that the first entryman had abandoned the land for more than six months, and the ultimate decision of the Secretary of the Interior directing the cancellation of the entry was based upon a finding, not that the entryman had abandoned the land, but that he was seeking, by a seeming compliance

with the forms of law, to obtain the land for another. The suit proceeded on the theory that the Secretary's decision was inconclusive because resting upon a point not in issue between the contestants, and the Supreme Court of Michigan sustained that theory. But when the case came here it was held that, as it appeared from the evidence presented in the contest, and particularly from the testimony of the entryman, that he was not acting in good faith for himself but with the purpose of acquiring the title for another, the Secretary had not exceeded his authority, but had only exercised "that just supervision which the law vests in him over all proceedings instituted to acquire portions of the public lands." Doubtless it is true, as a general rule, that in a contest before the Land Department the decision should be confined to the questions put in issue by the parties; but we think it is also true that when, with their acquiescence, the hearing is extended to other questions, there can be no objection to the decision of the latter.

3. It is further contended that the homestead law does not prohibit, but impliedly permits, an entryman to agree, in advance of commuting his entry, to sell the land, and therefore that the Land Department made a mistake of law in canceling Hately's entry because of his agreement with Bailey. The contention is not sound. Section 2289 of the Revised Statutes, as amended by the act of March 3, 1891, 26 Stat. 1099, c. 561, creates the homestead right and names the beneficiaries. Section 2290, as amended by the same act, requires any person applying to enter land under the preceding section to make affidavit that, among other things, "he or she does not apply to enter the same for the purpose of speculation, but in good faith to obtain a home for himself, or herself, and that he or she has not directly or indirectly made, and will not make, any agreement or contract in any way or manner, with any person or persons, corporation or syndicate whatso-

ever, by which the title which he or she might acquire
from the Government of the United States should inure,
in whole or in part, to the benefit of any person, except
himself, or herself." It was under these sections that
Hately's preliminary entry was made. Section 2291, in
prescribing the time and manner of making final proof,
requires the applicant to make "affidavit that no part
of such land has been alienated, except as provided in
section twenty-two hundred eighty-eight," which permits
alienation for church, cemetery, school and other enu-
merated purposes, none of which is present here. Thus,
the homestead law not only proceeds upon the theory that
the land is to be acquired for the exclusive benefit of the
entryman, but contains provisions which make it impos-
sible for him to perfect his claim, after alienation or con-
tract therefor, without committing perjury. True, § 2301,
as amended by the act of March 3, 1891, *supra,* under
which Hately's entry was commuted, says nothing about
alienation, but its only purpose is to give the entryman
an option to substitute the minimum price of the land
for a part of the five years of residence and cultivation
otherwise required. In other respects the operation and
application of §§ 2290 and 2291 are not affected by it.
We are therefore of opinion that the Secretary of the
Interior did not err in ruling, as he did, that "entering into
such forbidden agreement ended the right of the entryman
to make proof and payment and rendered him incom-
petent to further proceed with his entry." See *Anderson
v. Carkins,* 135 U. S. 483, 487; *Hafemann v. Gross,* 199
U. S. 342, 345.

Other contentions are advanced in the brief for the
appellant, but of them it suffices to say that in our opinion
they have less merit than those before mentioned.

*Decree affirmed.*