**SMITH et al. v. WILLIAMS et al.**

No. 16268. Opinion Filed May 15, 1928.

Rehearing Denied Sept. 11, 1928.

(Syllabus.)

1. **Courts—Federal Court Jurisdiction— Ejectment Involving Indian Land.**

Allegations in the petition in an action of ejectment that defendants were asserting ownership in themselves under a certain guardian's deed, and that such deed was void under congressional legislation regulating allotment of lands to a Chickasaw freedman, do not present a case arising under the laws of the United States of which a federal court has jurisdiction without diversity of citizenship.

2. **Appeal and Error—Review—Sufficiency of Evidence—Cancellation of Guardian's Deed for Fraud.**

Where the finding of a trial court that the sale of a minor's land by his guardian was fraudulent, and that a guardian's deed thereto was procured by fraud, is properly supported by the evidence, a judgment canceling such deed will not be set aside on appeal.

3. **Same—Judgment Sustained.**

Evidence examined, and held, sufficient to support the findings and judgment as to the fraud and canceling of guardian's deed.

4. **Vendor and Purchaser—Bona Fide Purchasers—Notice—Conveyances of Record.**

A purchaser of real estate is not bound to take notice of recorded deeds executed by any person other than those through whom he is compelled to deraign his title.

5. **Same—Guardian and Ward—Record Insufficient to Impart Notice of Purchaser's Fraud in Obtaining Guardian's Deed.**

Where, in a proceeding by a guardian for the sale of real estate belonging to his ward, a person signs an appeal bond for an appeal from the county court to the district court from an order denying the petition to sell, and such person thereafter becomes the purchaser at the guardian's sale, and the sale is approved by the county court, the fact that such purchaser signed such appeal bond is not sufficient to impart notice to persons who subsequently deal with the purchaser, of fraud practiced by such purchaser in obtaining the guardian's deed.

6. **Indians—Unallotted Land Purchased by Chickasaw Freedman not Restricted.**

There were no restrictions on the alienation of land purchased by a Chickasaw freedman under the provisions of section 16 of the Act of Congress of April 26, 1906.

7. **Same—Land Purchased by Freedman Alienable by Him Before Patent Issued.**

When a duly enrolled Chickasaw freedman entitled to purchase additional unallotted land under section 16, Act of Congress, April 26, 1906, had complied with all the rules and regulations of the Secretary of the Interior, and had selected such land and applied for same, and paid the appraised value thereof, he thereby acquired a complete equitable title, which in the absence of restrictions he could convey.

thorizing Purchase of Unallotted Lands by Freedmen.

Section 16 of the Act of Congress of April 26, 1906, granting Choctaw and Chickasaw freedmen the right to purchase certain unallotted lands at the appraised value, is valid though not ratified or approved by the two Indian Nations.

**9. Guardian and Ward—Grantee in Fraudulent Guardian's Deed Liable for Amount Received for Oil Royalties.**

One who, by fraud, procures a guardian's deed to a minor's land is liable for the full amount received by him for royalties from oil produced therefrom while held by him.

Commissioners' Opinion, Division No. 2.

Error from District Court, Carter County; Asa E. Walden, Judge.

Action by Ben Williams et al. against C. R. Smith et al. in ejectment joined with action to quiet title. Judgment for plaintiffs. After judgment below, defendant C. R. Smith died, and cause revived as to said defendant in name of executors of his estate. Affirmed in part and reversed in part.

Stuart, Sharp & Cruce and Potterf & Gray, for the heirs and executors of the estate of C. R. Smith, deceased.

Hefner & Johnson, for plaintiff in error Humble Oil & Refining Company.

James B. Diggs, William C. Liedtke, Redmond S. Cole, C. L. Billings, and Hefner & Johnson, for plaintiff in error Gypsy Oil Company.

H. A. Hicks and Sigler & Jackson, for defendants in error.

DIFFENDAFFER, C. This action was commenced in the district court of Carter county by Ben Williams, W. N. Cobb, and J. A. Steen against C. R. Smith, Humble Oil & Refining Company, a corporation, and the Gypsy Oil Company, a corporation, for a decree awarding them possession and quieting title in them to certain real estate, and for damages for withholding possession, and for rents and royalties for oil and gas produced therefrom. Since the trial, defendant C. R. Smith died, and the cause was revived as to him in the names of his executors and heirs.

The original petition, among other things, alleged that the plaintiffs were the legal owners in fee simple and entitled to the possession of certain premises, including the northeast quarter of the northwest quarter of the northeast quarter of section 9, township 4 south, range 3 west, containing 10 acres, situated in Carter county, Okla. They set up their deraignment of title by patent deed from the Choctaw and Chickasaw Nations to Ben Williams, a Chickasaw freedman, conveying the 10 acres above described, dated the 12th day of November, 1913, and patent deed from the Choctaw and Chickasaw Nations for the other 30 acres, dated the 21st day of November, 1906, and by deed from Ben Williams to his coplaintiffs, dated January 4, 1923. Copies of which are attached to the petition. Defendants claim title to the 10-acre tract through a purported guardian's deed, executed by Henry Williams, guardian of Ben Williams, on the 9th day of December, 1911, by which said 10-acre tract was conveyed to defendant C. R. Smith, which deed was executed on order of sale of the county court of Carter county, confirmed by the county court on December 8, 1911; that C. S. Smith, thereafter, on August 25, 1913, executed and delivered an oil and gas lease covering said tract to the defendant Humble Oil & Refining Company, which company, on July 1, 1914, assigned a one-half interest in the oil and gas lease to defendant Gypsy Oil Company. On November 29, 1910, Henry Williams executed a deed for said 10-acre tract, to defendant C. R. Smith. All of said instruments were of record in Carter county. Plaintiffs alleged that all of said conveyances were void, assigning numerous reasons therefor, among which were irregularities in the appointment of the guardian, and in the petition for sale, the notice of sale and the appraisement; that it did not sell for 90 per cent. of the appraised value; that it was not sold for cash; that defendant C. R. Smith, the purchaser, and the guardian, Henry Williams, entered into a conspiracy to defraud the minor, Ben Williams, out of the land, and that the proceedings and sale were fraudulent, and had and made in pursuance of said conspiracy; that the warranty deed made by Henry Williams to defendant C. R. Smith was void for the reason that Henry Williams never owned any right, title, or interest to or in the land, and that said deed was made to cheat and defraud the minor out of said land; that the whole amount paid for the land was $100, which amount with legal interest was tendered into court, same having been tendered to defendant C. R. Smith, and by him refused; that all of said conveyances created a cloud upon the title of plaintiffs. One of the allegations in plaintiffs' petition by which the validity of the

guardian's deed was assailed, being paragraph 7, was:

"Said sale was made and said agreement to sell was entered into prior to the selection of said lands for allotment purposes, which agreement was in violation of the Atoka Agreement, and all acts or attempted acts in carrying said Agreement are prohibited by acts of Congress of the United States, and null and void."

Plaintiffs also allege that defendants have wrongfully held possession of the 10 acres since December 9, 1911. There are other grounds set up in separate causes of action. Plaintiffs pray that they be decreed the owners of the property; that they be awarded the possession thereof; that their title be declared valid; that their title be quieted, and for $201,000 damages, and for general relief.

Defendants in due time filed their joint petition and bond for removal of the cause to the United States District Court for the Eastern District of Oklahoma, alleging as grounds therefor that the action was one arising under the Constitution and laws of the United States, citing the allegations in paragraph No. 7 of the petition, hereinbefore quoted, relative to the guardian sale being in violation of the Atoka Agreement and other acts of Congress.

The petition and bond for removal were filed on the 4th day of August, 1923, and, thereafter, and before any action had been taken thereon, plaintiffs moved to amend their petition by striking out paragraph No. 7 relative to the sale being in violation of the Atoka Agreement. The amendment was allowed, and the petition for removal was denied, defendants reserving their exceptions. An amended petition was then filed substantially the same as the original petition, omitting No. 7, which was stricken on motion of plaintiffs. Separate answers were filed by defendants, setting up their chain of title through the guardianship proceedings and the guardian's deed, and denying any fraud or knowledge thereof. The cause proceeded to trial before the court, without a jury, resulting in a judgment for plaintiffs, the court making its findings of fact and conclusions of law upon request of defendants.

The findings of fact are as follows:

"The court finds the following facts in this case, to wit: That the plaintiff Ben Williams, was a duly enrolled Chickasaw freedman, and has allotted 30 acres of land under the Original Allotment, and was, under the Act of Congress approved April 26, 1906, entitled to receive and purchase at appraised value 10 acres of unallotted lands; that Henry Williams was the guardian of Ben Williams; that said guardian had employed Moore & Bass, a firm of lawyers in Ardmore, to file a petition to sell 30 acres of land belonging to Ben Williams, and the court had entered an order directing said sale; that about this time the guardian of Ben Williams saw Smith, and Smith sent to the Commissioner of the Five Civilized Tribes at Muskogee, the money necessary to pay the appraised value of the N. E. ¼ of N. W. ¼ of N. W. ¼ of section 9, township 4 south, range 3 west, and at the same time said Smith took a deed to said land signed by the father and guardian of said minor, which deed recited a consideration of $1 and provided for the payment of $40 when the patent was issued; that the guardian at the same time entered into an agreement to sell this land to Smith, and at Smith's request, discharged his attorneys and hired Charles Von Weise to represent him; that Smith placed upon record the deed given him by the father and guardian of the plaintiff, and this deed had the effect of preventing other persons from bidding on said land and enabling Smith to buy same. That after said transaction said Charles Von Weise filed another petition asking for the sale of the 30 acres of land included in the former order of sale, and also the 10 acres above described. That thereafter the court set aside the first order of sale above mentioned. that the county judge refused to grant said order of sale, and that the guardian appealed to the district court of Carter county. That C. R. Smith signed the appeal bond for the guardian in said appeal, together with W. T. Roberts, who was an employee in Smith's office, and carried on said appeal. That said order was reversed and the county court ordered to enter an order to sell said land. That, thereafter, said order was made and said lands sold to Smith for the sum of $100.

"The court finds that the guardian during this time was confined in the county jail of Carter county; that he was so ignorant that he had no conception of what he was doing, and that this was all known to Smith. That this guardianship sale was really carried on. not at the instance of the guardian. but at the instance of C. R. Smith, under whose influence and domination the guardian was at all times acting and carrying out the purpose of the said Smith in his attempt to get possession of this plaintiff's property, and that this conduct on the part of the defendant Smith was a fraud upon the part of said purchaser. That after the above transaction the lands were deeded to Smith by the guardian of said plaintiff, and that, thereafter, on the 25th day of August, 1913, Smith made a contract leasing

said lands for oil and gas purposes to the Humble Oil & Refining Company, who made a contract conveying an undivided one-half interest in said lease to the Gypsy Oil Company.

"The court finds that the Humble Oil & Refining Company and the Gypsy Oil Company had such knowledge of said frauds, as above stated, as would put a reasonable and prudent person on inquiry. The court finds that all the knowledge and information said Humble Oil & Refining Company and Gypsy Oil Company had was the information which they received from the record in the county clerk's office, and in the probate proceedings in this case, and they are thereby bound by same, and that the guardian's deed is void by reason of the fraud practiced by said C. R. Smith in procuring title to said lands, and that the lease contract to the Humble Oil & Refining Company and the Gypsy Oil Company is void, and conveys no title to said defendants.

"The court further finds that, on November 30, 1910, the Farmers Loan & Security Company mailed to the Commissioner of the Five Civilized Tribes at Muskogee, Okla., an application for Ben Williams to be permitted to purchase said 10 acres of land, as above indicated; that the Commissioner set aside said lands, but that said Commission in no way communicated with the plaintiff or his guardian, and never at any time before patent notified the plaintiff or his guardian that said application had been received, or that any action had been taken thereon until the patent was issued. That the patent was signed by the Governor of the Chickasaw Nation on October 2, 1913, and by the Principal Chief of the Choctaw Nation on October 20, 1913, and was thereafter approved by the Secretary of the Interior and delivered to the plaintiff, Ben Williams; that the plaintiff, Ben Williams, and his guardian were never in possession of said lands, and no person was ever in the possession of said lands for and on behalf of Ben Williams, and the court finds that up to the time said patent was issued, the title to said property remained in the Chickasaw and Choctaw Nations, and that Ben Williams had no right, title, or estate in said lands which could be conveyed by a guardian's deed, and that the guardian's deed conveyed no title in said land to Smith, and that the lease to Humble Oil & Refining Company gave them no right or title to said land.

"The court further finds that the Gypsy Oil Company and Humble Oil & Refining Company have received the sum of $60,517.98 for oil produced from said lands, and that they have paid the sum of $61,609.52 for developing same, and that for said reason said Humble Oil & Refining Company are not liable to the plaintiff for said oil, and the court finds in favor of said defendants in so far as the plaintiff's petition asks a money judgment against said defendants.

"The court further finds that C. R. Smith has received from said lands as royalties the sum of $10,154, and the court finds that said Smith is liable to the plaintiff for said sum, together with interest thereon, and that the defendant Smith is entitled to be credited with the sum of $100 and interest thereon from the date same was paid to the guardian at the rate of six per cent. per annum."

The conclusions of law are:

"The court concludes, as a matter of law, that the guardianship sale above mentioned, and the lease to Humble Oil & Refining Company and the assignment of said lease to Gypsy Oil Company, are void for the reason that said guardian's deed was obtained by fraud, and that the Humble Oil & Refining Company and Gypsy Oil Company took same with notice thereof, and for the further reason that at the date of said guardian's deed, the said Ben Williams did not own any interest in said land which was capable of being conveyed by guardian's deed, and that Ben Williams obtained his title to said land at the time when said patent was issued to him, and owned no interest in said land prior to said time, and that plaintiff is entitled to a judgment canceling said guardian's deed and the oil lease, and quieting his title to said land, and is entitled to a judgment against C. R. Smith for $10,154, and that the defendants Humble Oil & Refining Company and Gypsy Oil Company are entitled to a judgment in their favor in so far as the plaintiff's petition prays a money judgment against them."

Judgment was entered under the findings of fact and conclusions of law, canceling all the deeds and leases and assignments of leases covering the 10 acres, and in favor of plaintiffs and against defendant C. R. Smith, for the sum of $10,154 less the $100 paid by Smith for the land, with interest, and refused any money judgment against either oil company except costs.

From this judgment all the defendants appeal, and plaintiffs filed a cross-appeal from that part of the judgment refusing a judgment against the defendant oil companies for the total value of the oil produced from said lands.

It is first contended by plaintiffs in error that the trial court erred in denying their petition for removal to the federal court. They contend that the cause being properly removable to the federal court under plaintiffs' petition first filed, the court erred in permitting the plaintiffs, after defendants had filed their petition and bond for removal, to strike from their petition the al-

legations raising the federal question, and then denying their petition for removal.

The petition of plaintiffs states a complete action at law in ejectment by plaintiffs, who are out of possession, against defendants in possession. That part of plaintiffs' petition which undertakes to anticipate the defense, and show a deraignment of defendants' title, is wholly unnecessary in a petition in ejectment. It is that part of the petition that defendants claim raises a federal question. Under section 466, C. O. S. 1921, chap. 10, Laws 1910-11, an action in ejectment by a party out of possession may be joined with an action to quiet title. The state court is the only court that has jurisdiction over such joint action in this state. Such action cannot be maintained in the federal courts whatever may be the rule in the state court. Scott v. First Nat. Bank, 285 Fed. Rep. 832, and cases therein cited. We think the case was not removable under the rule in Taylor v. Anderson, 234 U. S. 74, 58 L. Ed. 1218, where it was said:

"The petition alleged that the plaintiffs were the owners in fee and entitled to the immediate possession; that the defendants had forcibly taken possession and were wrongfully keeping plaintiffs out of possession, and that the latter were damaged thereby in the sum named. Nothing more was required to state a good cause of action."

The court in that case held that, where the petition went beyond what was required, and alleged the grounds by which the defendants claimed title and ownership, and that such claims were void under legislation of Congress restricting the alienation of lands allotted to Choctaw and Chickasaw Indians, such anticipated defense was neither essential to nor appropriate in a petition in ejectment, and that such allegations do not present a case arising under the laws of the United States of which a federal circuit court had jurisdiction, without diversity of citizenship. That was done in this case. Had the petition for removal been granted, the federal court would not have had jurisdiction. The petition for removal was properly denied.

We next consider that part of the findings and conclusions of the trial court wherein it is found and held that the proceedings for guardian's sale, and the sale, were fraudulent and void.

It is earnestly contended by defendants that the evidence is insufficient to support these findings. As heretofore shown, the 10 acres of land involved here were not a part of the allotment of plaintiff, Ben Williams, but were purchased under the provision of section 16 of the Act of Congress of April 26, 1906. Having been allotted but 30 acres under the Supplemental Choctaw and Chickasaw Treaty, approved by Act of Congress of July 1, 1902, Ben Williams made application for the purchase of the additional 10 acres September 6, 1910. On November 30, 1910, payment of the appraised value of the land, $50, was made. The money was furnished by defendant C. R. Smith. On the same date, Henry Williams, father of Ben Williams, executed a warranty deed for this land to defendant C. R. Smith. This is the deed referred to in the findings of the court as having the effect of preventing other persons from bidding on the land and enabling Smith to buy same. Smith testified that he never claimed any title or right under this deed, but when asked why he took the deed, he answered:

"The purpose of the deed and the sole purpose was to have a string on the money I was advancing, to have some showing for the money."

After the money had been paid, he could, of course, have no way of getting it back, and he concluded the only way he could retain "a string on the money," was to take this deed, which was evidently intended to cloud the title, and thus force any person who might thereafter buy the land to deal with him in order to clear the record. We think, from his own evidence, it was taken for the purpose of clouding the title, and that it would naturally have the effect of restricting bidding.

There in an abundance of evidence in the record to support the findings of the trial court that the guardian, Henry Williams, was ignorant and uneducated, unable to read or write, and that he had but little, if any, knowledge, of the proceedings. The first application to sell the 30 acres, which was sold at the same time the 10 acres was sold to Smith, did not include the 10 acres. This application had been allowed by the county court, but at this stage of the proceedings, at the suggestion of Smith, and upon his promise to pay the attorney's fee for conducting the sale, a change was made in attorneys representing the guardian, and immediately thereafter a new application to sell the land of his ward was made, which included the 10 acres here in controversy.

Henry Williams testified that he never made application for the sale of the 10 acres; that he did not know that his ward had been awarded the land until some two or three years before this suit was brought, and had no knowledge whatever of the proceedings

for sale or the sale of this land. It is contended by defendants that this cannot be true, and that the witness must have known of it in view of the many times he was called upon to sign various papers in connection therewith. It is contended, further, that this witness is unworthy of belief on account of a number of criminal charges, which appear to have been lodged against him about that time. As to his having no knowledge that his ward had been awarded the land, he is, in a measure, corroborated by the record of the Commission, which shows that the patent was mailed December 30, 1913, and returned unclaimed February 13, 1914.

The record discloses that in every instance where the signature of Henry Williams appears, it is made by mark. He testifies that he generally signed by thumb mark but in none of the proceedings of the sale, except in connection with his final report as guardian and the deed, does it appear that his signature is by thumb mark.

Since the former opinion was filed, oral argument has been had and separate briefs filed, and it is contended, in view of the evidence of Charles Van Weise, the attorney who conducted the proceedings for the sale, that this "is merely another instance of the false swearing of Ben Williams." It is stated that counsel for plaintiff will not have the temerity to question the testimony of Charles Van Weise in this or any other court. In view of this, we have again carefully gone over the testimony of Mr. Van Weise, and say without hesitancy that every word of his testimony may be true, and yet Ben Williams may be telling the truth. Mr. Van Weise says that he read over each one of the instruments that Williams signed, whether he signed by mark or by thumb print, but he nowhere testifies that he explained to Ben Williams that the sale proceedings included the 10 acres of land here in controversy. He may have read them to him, but in view of the somewhat complicated descriptions of the land described, we think it unlikely that Henry Williams would understand what land was described, without a careful explanation of the description.

We here quote the prayer contained in the guardian's petition to sell the land, which is as follows:

"Wherefore, petitioner prays that the court upon hearing had herein be authorized to sell the N. E. ¼ of N. E. ¼ of sec. 22, T. 2 S., R. 1 E., and the S. ½ of N. E. ¼ of S. E. ¼, and the N. W. ¼ of N. E. ¼ of S. E. ¼ of sec. 22, T. 2 S., R. 1 E. and the N. E. ¼ of N. W. ¼ of N. W. ¼ of sec. 9 T., 4 S., R. 3 W., at public or private sale, as shall be deemed most beneficial and for the best interest of said wards."

It could hardly be contended that an uneducated freedman, who could neither read nor write, and could not sign his name, would understand this unless it was carefully explained to him. In each instance where Van Weise was asked if Henry Williams understood what was in the instrument she had read to him, he replied that he did not know whether Williams understood them or not. His testimony discloses that he fully explained but one of the instruments which Williams signed, or to which he had signed Williams' name, and that was the appeal bond, where an appeal was taken from the county court to the district court from an order denying the petition to sell the real estate, and this instrument did not in any way describe the land. In this connection it must be borne in mind that Williams testified that he understood all the time that proceedings were being had for the sale of the 30 acres of land which he knew his son owned. It is stated in the brief of one of the defendants that Van Weise testified that Henry Williams was acquainted with the contents of all the various instruments signed by him; that he knew this particular tract was being sold. We have again searched the record for this evidence, but have failed to find it, and defendants have failed to point it out to us.

We think there is ample evidence in the record to support the findings as to the fraud in the procurement of the guardian's deed, and that the findings with reference thereto are not against the clear weight of the evidence.

Henry Williams made application to purchase an adjoining 10-acre tract, which his wife, if living, would have been entitled to purchase. This application was rejected, and defendant offered to prove that the government offered unallotted lands for sale in this territory, including the last-mentioned 10-acre tract, in the latter part of 1910 and 1911, and that this adjoining 10 acres could have been bought for $10 per acre, and that the price of land at the government sale was less than the price paid for the land in question; that the average price of land in that community at that sale was $7.50 per acre; and that the adjoining tract men-

tioned was offered for sale and could have been bought for $10 per acre, and that that 10 acres, as well as numerous other tracts, failed to sell for the same price, and that the land involved was substantially of the same quality.

The offer and tender of proof was rejected by the trial court upon the ground that it proved no issue in the case. It is contended that the rejection of this evidence was reversible error, and that if admitted this evidence would have shown that the land brought all and more than it was worth, and also that there could have been no possible motive for any scheme or conspiracy to acquire this land.

We fail to see the force of this argument. How evidence of what other land sold for at a government sale, at another time, tended to prove the value of this particular tract, we are unable to see. We do not think defendants were prejudiced by the rejection of this testimony. What other lands sold for at another sale, under different circumstances, was no part of the issues in the case. It would seem to us that if defendants desired to show that the land in controversy sold for all, or more, than it was actually worth at the time of the sale, they could easily have proved the reasonable market value of this land at that time. This defendants did not attempt to do, except by way of comparison.

Complaint is also made of the refusal of the court to allow defendant C. R. Smith to testify that he never claimed title to the land under the warranty deed from Henry Williams, and did not use same in any way to prevent others from bidding on the land. He was permitted to testify fully as to his purpose in taking the deed, and stated that:

"The purpose of that deed, and the sole purpose, was to have a string on the money I was advancing, to have some showing for the money."

He was then asked.

"Did you ever claim any title under that deed, Mr. Smith?"

That was only an evidence of the advancement of the money. To these questions objections were made, and the objections sustained. Counsel for Smith then made the following tender of proof:

"We offer to prove by this witness that he never at any time held any title under the deed executed by Henry Williams as an individual, and did not claim in his own mind, or to others, that he held any title

under that, and he never used it or attempted to use it for the purpose of throwing off other bidders, or thought in any way to control the price of the land at the sale in any way, or interfere in any way with the sale of the land."

The offer and tender were rejected, and upon these rulings defendants base the foregoing complaint. But immediately thereafter Smith was asked: "Did you ever assert any title under that deed?" This question was objected to, and the objection overruled, and in answer to the question Smith replied: "I never thought of it after it was taken." He then testified that he never had any conversation with the guardian or any other person with regard to keeping other persons off at the sale, or to keep them from bidding, and never thought of such a thing; that he never made any effort in any way to keep other persons from bidding on the land. It will thus be seen that he was permitted to testify, in substance, to everything contained in the offer and tender of proof. We think there is no merit in this contention.

Defendants argue that, though an attempt was made to stifle competition and chill the bids of the sale, yet, if these attempts were unsuccessful, and the land actually sold for its fair value, the attempted fraud should be disregarded, and the sale upheld. Many authorities are cited in support of this proposition, and it may be conceded that, in some instances, this rule has been applied, but none of the authorities cited are of sales under circumstances like in the instant case. Here the guardian testifies that he did not know the application to sell included this particular 10-acre tract, and, in fact, did not know his son had been awarded this land until some two or three years before the suit was filed.

We think the rule contended for has no application in cases involving fraud of this nature.

Defendants Humble Oil & Refining Company and Gypsy Oil Company contend that the finding and conclusion that the notice which they obtained from the records in the county clerk's office and the probate proceedings was sufficient to charge them with knowledge of the fraud, is erroneous.

From the oral argument had and the authorities cited in the briefs filed since the former opinion, and a more careful consideration of those cited in the original briefs, we feel compelled to hold that the Gypsy Oil Company and the Humble Oil & Refin-

ing Company were not chargeable with notice of the fraud in the guardian's sale. As heretofore pointed out, it was not found by the trial court that either of the companies had any actual notice of, or participated in, the fraud in the sale proceedings. The finding of the trial court was that all the knowledge and information that these companies had was the information received from the record in the county clerk's office and the probate proceedings in this case.

The only thing in the probate proceedings, by which Smith could be connected therewith down to the sale to him, was the fact that he signed the appeal bond in the appeal from the county court to the district court from the order denying the petition to sell the land. We think this was wholly insufficient to charge the oil companies with any notice whatever.

In Ward v. Thompson, 111 Okla. 52, 237 Pac. 569, where it was alleged that Thompson fraudulently and wrongfully entered into a conspiracy, and a wrongful and corrupt agreement with Henry Ward, the guardian, to purchase the land of his ward at a grossly inadequate price, and in furtherance of same did sign the guardian sale bond, and that the purpose and act of Thompson in signing the sale bond was to carry out his conspiracy and to cheat and defraud the plaintiff out of said property, the court in discussing the allegations said:

"The additional sale bond and the return of sale showing the name of the purchaser were matters of record in the proceedings, and must have been considered by the court on the hearing on the return of sale."

The court there, in effect, held that the fact that Thompson signed the sale bond, having been known to and considered by the court on the hearing of the return of sale, was not sufficient to require the court to inquire concerning this fact. The county court must have known and considered the fact that Smith signed the appeal bond in the instant case when he passed upon the return of sale. If the county judge knew of this and approved the sale, it would seem that persons, who subsequently dealt with Smith in reference to the land, would not be required to inquire into this circumstance.

In McNally v. Haynes, 59 Tex. 583, it was held:

"* * * But the purchaser is not chargeable with notice of all the proceedings in administering the estate. In such case the record of which he is charged with notice is the application for the sale, with the ac-

companying exhibits, if any, and the order of sale; beyond these he is not bound to look."

The setting aside the former order of sale for lands, not including the 10 acres herein controversy, did not appear in the proceedings, nor did the fact that Henry Williams had changed attorneys. It is not shown that either the Gypsy Oil Company or the Humble Oil & Refining Company knew anything about these circumstances.

What was the effect of the deed dated November 29, 1910, purporting to convey the land from Henry Williams to Smith, which was of record in Carter county? This deed, it would seem, was void on its face for, at the date thereof, title to the land was in the United States in trust for the Choctaw and Chickasaw Indian Nations. Henry Williams then had no interest therein, and never did acquire any interest thereafter.

The rule seems to be well established in this state that the purchaser of real estate is not bound to take notice of registered liens or deeds created or executed by any person other than those through whom he is compelled to deraign his title. Perkins v. Cissell, 32 Okla. 827, 124 Pac. 7; Reigel v. Wood, 110 Okla. 279, 229 Pac. 556. In the latter case, it was said:

"The grantee is not required to take notice of conveyances not within his chain of title or those conveyances through which the purchaser is not compelled to deraign his title."

The oil companies were not required to take notice of the deed from Henry Williams to Smith for the reasons stated. We must, therefore, hold that the trial court was in error in its findings and conclusions that the records in the county clerk's office and the guardianship proceedings were sufficient to impart notice to the Gypsy Oil Company and the Humble Oil & Gas Company.

It follows that the judgment canceling the lease and assignment of the lease must be reversed, unless it is sustained upon other grounds contended for by defendants in error, which are hereinafter considered.

Having reached the conclusion we have on the question of fraud, we would not deem it necessary to pass upon the finding of the trial court, and the conclusion of law based thereon, to the effect that up to the time the patent was signed by the Governor of the Chickasaw Nation and the Principal chief of the Choctaw Nation, and the approval of the Secretary of the Interior, the

latter date being November 12, 1913, Ben Williams had no right, title, or estate in said land that could be conveyed, except for the cross-appeal by plaintiffs.

It is contended by plaintiffs that, under the authority of Franklin v. Lynch, 233 U. S. 269, 58 L. Ed. 954, the deed is void for the reason that it was executed before patent issued. It was there held that a deed executed by a Chickasaw allottee, before the issuance of the patent, was void. This holding is based wholly on the provisions of paragraphs 15 and 16 of the Supplemental Agreement of July 1, 1902, which expressly prohibited the sale of allotted lands to members and freedmen of the Choctaw-Chickasaw Tribes before issuance of patent.

It was also held in that case that the Act of Congress of April 21, 1904, by which all restrictions upon alienation of lands of all allottees of the Five Civilized Tribes of Indians who were not of Indian blood were removed, did not remove the inhibition against sale before issuance of patent contained in the Supplemental Agreement of July 1, 1902.

If the land in question had been a part of the allotment of Ben Williams, as a Chickasaw freedman, the contention of plaintiffs in this regard might be upheld, but such is not the case. The 10 acres here involved were acquired under section 16 of the Act of Congress of April 26, 1906, which provides that after all allotments provided for by that and other acts of Congress have been made, the residue of the lands, not reserved or otherwise disposed of, shall be sold by the Secretary of the Interior, under rules and regulations prepared by him, and—

"* * * In the disposition of the unallotted lands of the Choctaw and Chickasaw Nations, each Choctaw and Chickasaw freedman shall be entitled to a preference right under such rules and regulations as the Secretary of the Interior may prescribe to purchase at the appraised value enough to equal, with that already allotted to him, 40 acres in area."

The rules and regulations promulgated by the Secretary of the Interior under the above provision were all complied with, and the land selected and paid for in the manner and within the time provided by such rules and regulations.

The Act of April 26, 1906, contained no restrictions whatever upon the sale of the lands selected and purchased by a Choctaw and Chickasaw freedman in pursuance of its provisions. The selection appears to have been made on September 6, 1910. Payment of the full appraised value was made and receipt acknowledged November 30, 1910, within the time provided by the rules and regulations of the Secretary of the Interior so that on the 30th day of November, 1910, Ben Williams, as such Chickasaw freedman had done all that he was required to do to entitle him to a patent. The right to a patent was established.

"There was undoubtedly a complete equitable interest, which in the absence of restrictions the owner could convey." Mullen v. United States, 224 U. S. 448.

See, also, Goat v. United States, 224 U. S. 459.

It is also contended by plaintiffs that Congress did not have the right to pass the act permitting freedmen to buy unallotted lands at the appraised value without the consent of the Choctaw and Chickasaw Nations, and that section 16 of the Act of April 26, 1906, is void, and that therefore Ben Williams had no right, title, or interest whatever in the land until patent was executed by the Governor of the Chickasaw Nation, and the Principal Chief of the Choctaw Nation, that is, October 20, 1913; that by reason thereof defendants must have had notice, as a matter of law, that the guardian's deed, issued December 9, 1911, was void; and that defendants were therefore liable for the full value of the oil taken from the land, conceded to be $70,671.98.

The proposition that the section 16 of the Act, supra, is void, cannot be sustained.

In Work v. McAlester-Edwards Coal Co., 262 U. S. 200, the Supreme Court of the United States sustained the validity of the Act of Congress of February 8, 1918, giving mining lessees the preferential right to purchase the surface of certain mineral lands at its appraised value, as fixed under the Act of Feb. 19, 1912. Neither of these acts was ratified or consented to by the Choctaw and Chickasaw Nations, so that the very power that Congress assumed to exercise in section 16 of the Act of 1906, supra, has been sustained by the Supreme Court of the United States. See, also, Texas Co. v. Henry, 34 Okla. 342, 126 Pac. 224.

The judgment should be affirmed as to Mary Stuart Smith, William H. Smith, and Charles Robert Smith, as executor of the estate of C. R. Smith, deceased, and affirmed in so far as it denies a money judgment against the Humble Oil & Refining Company and the Gypsy Oil Company, and re-

versed and remanded as to the Gypsy Oil Company and the Humble Oil & Refining Company, canceling the lease and assignment, with directions to enter judgment in favor of said companies in accordance with the views herein expressed.

BENNETT, TEEHEE, HERR, JEFFREY, REID, and LEACH, Commissioners, concur.

By the Court: It is so ordered.

(HEFNER, J., disqualified, not participating.)

Note.—See under (1) 34 Cyc. p. 1241. (2) 4 C. J. p. 877, §2853. (3) 9 C. J. p. 1256, §195. (4) 39 Cyc. p. 1719. (5) 28 C. J. p. 1202, §351. (6) 31 C. J. p. 514, §79. (9) 28 C. J. p. 1204, §352.