William SABO and Barbara
Sabo, Appellants,

v.

William A. HORVATH, Appellee.

No. 2682.

Supreme Court of Alaska.

Dec. 29, 1976.

Trigg T. Davis, Owens, Davis & Bartlett, Anchorage, for appellants.

Suzanne Pestinger, Birch, Jermain, Horton & Bittner, Anchorage, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, ERWIN and BURKE, Justices.

## OPINION

BOOCHEVER, Chief Justice.

This appeal arises because Grover C. Lowery conveyed the same five-acre piece of land twice—first to William A. Horvath and Barbara J. Horvath and later to William Sabo and Barbara Sabo. Both conveyances were by separate documents entitled "Quitclaim Deeds." Lowery's interest in the land originates in a patent from the United States Government under 43 U.S.C. § 687a (1970) ("Alaska Homesite Law"). Lowery's conveyance to the Horvaths was prior to the issuance of patent, and his subsequent conveyance to the Sabos was after the issuance of patent. The Horvaths recorded their deed in the Chitna Recording District on January 5, 1970; the Sabos recorded their deed on December 13, 1973. The transfer to the Horvaths, however, predated patent and title, and thus the Horvaths' interest in the land was recorded "outside the chain of title." Mr. Horvath brought suit to quiet title, and the Sabos counterclaimed to quiet their title.

In a memorandum opinion, the superior court ruled that Lowery had an equitable interest capable of transfer at the time of his conveyance to the Horvaths and further said the transfer contemplated more than a "mere quitclaim"—it warranted patent would be transferred. The superior court also held that Horvath had the superior claim to the land because his prior recording had given the Sabos constructive notice for purposes of AS 34.15.290.[1] The Sabos' appeal raises the following issues:

1. Under 43 U.S.C. § 687a (1970), when did Lowery obtain a present equitable interest in land which he could convey?

2. Are the Sabos, as grantees under a quitclaim deed, "subsequent innocent purchaser[s] in good faith"?

3. Is the Horvaths' first recorded interest, which is outside the chain of title, constructive notice to Sabo?

We affirm the trial court's ruling that Lowery had an interest to convey at the time of his conveyance to the Horvaths. We further hold that Sabo may be a "good faith purchaser" even though he takes by quitclaim deed. We reverse the trial court's ruling that Sabo had constructive notice and hold that a deed recorded outside the chain of title is a "wild deed" and does not give constructive notice under the recording laws of Alaska.[2]

The facts may be stated as follows. Grover C. Lowery occupied land in the Chitna Recording District on October 10, 1964 for purposes of obtaining Federal patent. Lowery filed a location notice on February 24, 1965, and made his application to purchase on June 6, 1967 with the Bureau of Land Management (BLM). On March 7, 1968, the BLM field examiner's report was filed which recommended that patent issue to Lowery. On October 7, 1969, a request for survey was made by the United States Government. On January 3, 1970, Lowery issued a document entitled "Quitclaim Deed" to the Horvaths; Horvath recorded the deed on January 5, 1970 in the Chitna Recording District. Horvath testified that when he bought the land from Lowery, he knew patent and title were still in the United States Government, but he did not rerecord his interest after patent had passed to Lowery.

---

1. AS 34.15.290 states:

   A conveyance of real property in the state hereafter made, other than a lease for a term not exceeding one year, is void as against a subsequent innocent purchaser or mortgagee in good faith for a valuable consideration of the property or a portion of it, whose conveyance is first duly recorded. An unrecorded instrument is valid as between the parties to it and as against one who has actual notice of it.

2. Because we hold Lowery had a conveyable interest under the Federal statute, we need not decide issues raised by the parties regarding after-acquired property and the related issue of estoppel by deed.

Following the sale to the Horvaths, further action was taken by Lowery and the BLM pertaining to the application for patent [3] and culminating in issuance of the patent on August 10, 1973.

Almost immediately after the patent was issued, Lowery advertised the land for sale in a newspaper. He then executed a second document also entitled "quitclaim" to the Sabos on October 15, 1973. The Sabos duly recorded this document on December 13, 1973.

Luther Moss, a representative of the BLM, testified to procedures followed un-

**3.** On February 16, 1970, special instructions were given regarding survey. On June 14, 1972, mineral deposit reservations were made. On December 7, 1972, Lowery published his application. Affidavit of posting was made on March 15, 1973, and on June 28, 1973, the BLM notified Lowery that $12.50 payment must be made for the land.

**4.** The entire process from the time the claimant decides on a homesite until the patent is passed is quite involved. A notice of location is filed with the BLM by the claimant. After filing of the notice of location, the claim normally proceeds within a five-year statutory period until the claimant is notified that he should submit application to purchase. After application to purchase, BLM requests a field report on the matter, and a realty specialist examines the land. He writes a report and makes his recommendation concerning compliance with the appropriate statute. If the field examiner recommends approval, a request for survey is prepared. The claim is then surveyed, and the plat of survey is forwarded to Washington, D. C. for approval. After it is approved and accepted by the Chief, Division of Cadastral Survey, it is returned to the Alaska State Office for filing. The claimant is then notified that he should direct publication of his claim in the nearest newspaper. In the case of a special survey, publication continues throughout a nine-week period. The newspaper submits proof of publication to the case file, and the claimant must submit an affidavit of posting to purchase the claim along with the appropriate map and his application for purchase. After all this is completed, the matter is finally reviewed. All reservations to the United States Government are summarized, and a final certificate is prepared. Upon signing of the final certificate, a patent is typed, reviewed several times, signed and sealed and the patent number is affixed. The patent is then mailed certified mail to the claimant.

**5.** 43 U.S.C. § 687a (1970) states:
Rights to purchase; price and limit of acreage; access to water front

der the Alaska Homesite Law [43 U.S.C. § 687a (1970)]. After numerous steps,[4] a plat is approved and the claimant notified that he should direct publication of his claim. In this case, Lowery executed his conveyance to the Horvaths after the BLM field report had recommended patent.

The first question this court must consider is whether Lowery had an interest to convey at the time of his transfer to the Horvaths. Lowery's interest was obtained pursuant to patent law 43 U.S.C. § 687a (1970) commonly called the "Alaska Homesite Law".[5] Since Lowery's title to the

Any citizen of the United States twenty-one years of age, or any association of such citizens, or any corporation incorporated under the laws of the United States or of any State or Territory authorized on May 14, 1898, by law to hold lands in the Territories, thereafter in the possession of and occupying public lands in Alaska in good faith for the purposes of trade, manufacture, or other productive industry, may each purchase one claim only not exceeding eighty acres of such land for any one person, association, or corporation, at $2.50 per acre, upon submission of proof that said area embraces improvements of the claimant and is needed in the prosecution of such trade, manufacture, or other productive industry, such tract of land not to include mineral or coal lands except as provided in section 270—1 of this title, and ingress and egress shall be reserved to the public on the waters of all streams, whether navigable or otherwise: *Provided*, That any citizen of the United States twenty-one years of age employed by citizens of the United States, associations of such citizens, or by corporations organized under the laws of the United States, or of any State or Territory, whose employer is engaged in trade, manufacture, or other productive industry may purchase one claim, not exceeding five acres, of unreserved public lands, such tract of land not to include mineral, coal, oil or gas lands except as provided in section 270—1 of this title, in Alaska as a homestead or headquarters, under rules and regulations to be prescribed by the Secretary of the Interior, upon payment of $2.50 per acre: *Provided further*, That any citizen of the United States, after occupying land of the character described as a homestead or headquarters, in a habitable house, not less than five months each year for three years, may purchase such tract, not exceeding five acres, in a reasonable compact form, without any showing as to his employment or business, upon payment of $2.50 per acre, under rules and regulations to be prescribed by the Secretary of the Interior, and in such cases surveys may be made without

property was contingent upon the patent ultimately issuing from the United States Government and since Lowery's conveyance to the Horvaths predated issuance of the patent, the question is "at what point in the pre-patent chain of procedures does a person have a sufficient interest in a particular tract of land to convey that land by quitclaim deed." *Willis v. City of Valdez*, 546 P.2d 570, 575 (Alaska 1976).

Here we must determine whether Congress, in passing 43 U.S.C. § 687a (1970), intended to prohibit the prepatent conveyance by Lowery. This court has upheld early conveyances under the Soldiers' Additional Homestead Act, 43 U.S.C. §§ 271–74. *Willis v. City of Valdez, supra* at 575. However, cases decided under other patent laws prohibit alienation at early stages in the "pre-patent chain."[6] We have found no recorded legislative history of 43 U.S.C. § 687a (1970) which assists us, and case law decided under this statute and its statutory predecessors does not clarify at what point in the prepatent chain alienation is permitted.[7]

We note initially that 43 U.S.C. § 687a (1970) and the regulations administering the Alaska Homesite Law are silent as to alienability. In the context of land patent law, this silence is significant. By comparison, the general homestead laws specifically prohibit alienation prior to final proof by requiring the filing of an affidavit which states under oath that "no part of such land has been alienated. . . ." 43 U.S.C. § 164 (1964). Homestead regulations further specify nonalienation prior to affidavit and final proof.[8] Cases decided under patent laws which contain specific prohibition against alienation have uniformly held that an attempted conveyance prior to final proof precludes patent from issuing from the United States Government, and such conveyances are held entirely void and unenforceable between the parties.[9]

The importance of the Alaska Homesite Law's silence with respect to alienation is again underlined by the fact that Congress extended the anti-alienation provision of the general homestead laws to the Alaska *Homestead* Act, 43 U.S.C. § 270 (1970).[10]

expense to the applicants in like manner as the survey of settlement claims under sections 270—10 and 270—15 of this title: *And provided further,* That the minimum payment for any such tract shall be $10, and no person shall be permitted to purchase more than one tract except upon a showing of good faith and necessity satisfactory to the Secretary of the Interior.

6. *Bailey v. Sanders,* 228 U.S. 603, 609, 33 S.Ct. 602, 57 L.Ed. 985, 989 (1913); *Anderson v. Carkins,* 135 U.S. 483, 487, 10 S.Ct. 905, 34 L.Ed. 272, 274 (1890); *Moffitt v. Bulson,* 96 Cal. 106, 30 P. 1022, 1023 (1892); *Harris v. McCrary,* 17 Idaho 300, 105 P. 558, 559 (1909); *Ronquillo v. Sandoval,* 71 N.M. 459, 379 P.2d 611, 613 (1962); *McDonald v. Lambert,* 43 N.M. 27, 85 P.2d 78, 85 (1938); *Howard v. Standolind Oil & Gas Co.,* 197 Okl. 269, 169 P.2d 737, 741–42 (1946).

7. *United States v. Buchanan,* 232 U.S. 72, 76, 34 S.Ct. 237, 58 L.Ed. 511, 514 (1914); *Russian-American Packing Co. v. United States,* 199 U.S. 570, 26 S.Ct. 157, 50 L.Ed. 314 (1905).

8. General Homestead Regulation, 43 C.F.R. § 2511.2(a) (1975) states:
    *Alienation of all or part of claim*; . . . .
    (1) The alienation of all or part of the land embraced in a homestead prior to making

proof except for the public purposes mentioned . . . will prevent the entryman from making satisfactory proof, since he is required to swear that he has not alienated any part of the land . . . .

9. *See* note 5, *supra.*

10. The Alaska *Homestead* Act specifically states:
    The right of any homestead settler to transfer any portion of the land so settled upon, as provided by section 174 of [Title 43], shall be restricted and limited within the Territory of Alaska as follows: . . . , and all contracts by the settlor made before his receipt of patent from the Government, for the conveyance of the land homesteaded by him or her, except as herein provided, shall be held null and void.
    The regulations promulgated pursuant to Alaska Homestead Act, 43 C.F.R. § 2567.7(c) (1975) state:
    In Alaska as elsewhere in the United States, a forfeiture of the claim results from a transfer of any part of the land or of any interest therein before the submission of the proof, with certain exceptions specified by law.

It is clear from the provision in the Alaska Homestead Act, the general homestead laws, and the regulations promulgated pursuant to them, that Congress and the BLM knew how specifically to prohibit alienation. Their failure to prohibit alienation in the Alaska Homesite Law or regulations therefore is quite significant. In *Willis v. Valdez, supra* at 574 n.7, we cited *Barnes v. Poirier*, 64 F. 14, 18 (8th Cir. 1894), which points to the significance of the absence of a specific alienation clause in the Soldiers' Additional Homestead statute. Numerous cases relating to United States land patents under other statutes hold that the silence of land patent statutes is determinative of the issue of alienability.[11] Significantly, the United States Supreme Court has stated:

> There is no requirement . . . that the entryman shall make oath that he has not alienated any interest in the land. The policy of the government to require such affidavit when it intends to make it a condition precedent to granting a title was indicated in the homestead act, and could readily have been pursued by a similar provision in the timber culture act if it was intended to extend the principle to that statute. . . .
>
> . . . If the entryman has complied with the statute and made the entry in good faith, in accordance with the terms of the law and the oath required of him upon making such entry, and has done nothing inconsistent with the terms of the law, we find nothing in the fact that, during his term of occupancy, he has agreed to convey an interest, to be conveyed after patent issued, which will defeat his claim and forfeit the right acquired by planting the trees and complying with the terms of the law. Had Congress intended such result to follow from the alienation of an interest after an entry in good faith, it would have so declared in the law. ˙ (citation omitted)

*Adams v. Church*, 193 U.S. at 515–17, 24 S.Ct. at 514–515, 48 L.Ed. at 771–72.

It should also be noted that prior to the conveyance to the Horvaths, Lowery had complied with a substantial portion of his obligation under the statute and regulations. He had filed his notice of location and his application to purchase and had lived on the land the required amount of time. A BLM field examiner's report had recommended patent be issued. It is true that various other events were necessary prior to the issuance of the patent. After the conveyance, a survey was conducted, various mineral reservations claimed, application to purchase was published and the payment of $12.50 was made to the BLM. We do not think that the mere fact that steps remained before issuance of patent precluded the existence of an alienable interest, where there has been basic compliance with the statutory demands.

In *Willis v. City of Valdez, supra* at 578, we held that one who later secured a patent under the Solders' Additional Homestead Act had an interest in land which was alienable at the time that he requested a survey. Here, Lowery had complied with numerous requirements under the Homesite Law including those of occupancy, and the BLM had recommended issuance of the patent. Since 43 U.S.C. § 687a (1970) does not prohibit alienation, we hold that at the time Lowery executed the deed to the Horvaths he had complied with the statute to a sufficient extent so as to have an interest in the land which was capable of conveyance.

Since the Horvaths received a valid interest from Lowery, we must now resolve the conflict between the Horvaths' first recorded interest and the Sabos' later recorded interest.

The Sabos, like the Horvaths, received their interest in the property by a quitclaim

11. *Sylvester v. Washington*, 215 U.S. 80, 86, 30 S.Ct. 25, 54 L.Ed. 101, 105 (1909); *Adams v. Church*, 193 U.S. 510, 516–17, 24 S.Ct. 512, 48 L.Ed. 769, 771–72 (1904); *Lamb v. Davenport*, 85 U.S. (18 Wall.) 307, 314, 21 L.Ed. 759, 761 (1873); *Phillips v. Carter*, 135 Cal. 604, 67 P. 1031, 1032 (1902) (Desert Land Act of 1877); and *McKennon v. Winn*, 1 Okl. 327, 33 P. 582, 585 (1893) (Federal Townsite Claim Act).

deed. They are asserting that their interest supersedes the Horvaths under Alaska's statutory recording system. AS 34.15.290 provides that:

> A conveyance of real property . . . is void as against a subsequent innocent purchaser . . . for a valuable consideration of the property . . . whose conveyance is first duly recorded. An unrecorded instrument is valid . . as against one who has actual notice of it.

■ Initially, we must decide whether the Sabos, who received their interest by means of a quitclaim deed, can ever be "innocent purchaser[s]" within the meaning of AS 34.15.290. Since a "quitclaim" only transfers the interest of the grantor, the question is whether a "quitclaim" deed itself puts a purchaser on constructive notice. Although the authorities are in conflict over this issue, the clear weight of authority is that a quitclaim grantee can be protected by the recording system, assuming, of course, the grantee purchased for valuable consideration and did not otherwise have actual or constructive knowledge as defined by the recording laws.[12] We choose to follow the majority rule and hold that a quitclaim grantee is not precluded from attaining the status of an "innocent purchaser."

■ In this case, the Horvaths recorded their interest from Lowery prior to the time the Sabos recorded their interest. Thus, the issue is whether the Sabos are charged with constructive knowledge because of the Horvaths' prior recordation. Horvath is correct in his assertion that in the usual case a prior recorded deed serves as constructive notice pursuant to AS 34.15.290, and thus precludes a subsequent recordation from taking precedence. Here, however, the Sabos argue that because Horvath recorded his deed prior to Lowery having obtained patent, they were not given constructive notice by the recording system. They contend that since Horvaths' recordation was outside the chain of title, the recording should be regarded as a "wild deed".

It is an axiom of hornbook law that a purchaser has notice only of recorded instruments that are within his "chain of title."[13] If a grantor (Lowery) transfers prior to obtaining title, and the grantee (Horvath) records prior to title passing, a second grantee who diligently examines all conveyances under the grantor's name from the date that the grantor had secured title would not discover the prior conveyance. The rule in most jurisdictions which have adopted a grantor-grantee index system of recording is that a "wild deed" does not serve as constructive notice to a subsequent purchaser who duly records.[14]

---

**12.** See Note, *Deeds—Quitclaim Grantee as a Bona Fide Purchaser*, 28 Ore.L.Rev. 258 n. 1 (1949) and the many cases cited therein. *See generally*, Annot., 59 A.L.R. 632 (1929); Annot., 162 A.L.R. 556, 560–62 (1946); 77 Am. Jur.2d, Vendor and Purchaser, §§ 711–13. On the other hand, there is also authority which holds that a quitclaim grantee cannot be a good faith purchaser. *See* 28 Ore.L.Rev. 258, at 259 n. 2. *See also* the territorial case of *Crossly v. Campion Mining Co.*, 1 Alaska 391 (1901). There it was held that a grantee accepting a quitclaim deed with *full knowledge* of a prior unrecorded deed was not a subsequent innocent purchaser in good faith. This case would not be conclusive with respect to quitclaim grantees who record under a recording system and without actual knowledge. *See also Wickwire v. City and Borough of Juneau*, 557 P.2d 783, fn. 7 (Alaska, 1976), holding that the right to recover damages for condemnation is not an interest in real property which passes by quitclaim deed.

**13.** 1 R. Patton & C. Patton, Patton on Land Titles § 69, at 230–33 (2d ed. 1957). *Cities Service Oil Co. v. Adair*, 273 F.2d 673, 676 (10th Cir. 1959); *Stafford v. Ballinger*, 199 Cal. App.2d 289, 18 Cal.Rptr. 568, 572 (1962); *Pierson v. Bill*, 138 Fla. 104, 189 So. 679, 684 (1939); *Jenkins v. Bates*, 230 Miss. 406, 92 So.2d 655, 657 (1957); *Baker v. Koch*, 114 Ohio App. 519, 183 N.E.2d 434, 437 (1960); *Portman v. Earnhart*, 343 S.W.2d 294, 297 (Tex.Civ.App. 1960); *Lone Star Gas Co. v. Sheaner*, 297 S.W.2d 855, 857 (Tex.Civ.App.1957); *Hyson v. Dodge*, 198 Va. 792, 96 S.E.2d 792, 796 (1957).

**14.** 1 R. Patton & C. Patton, Patton on Land Title § 69, at 230–33 (2d ed. 1957); *Lacey v. Humphres*, 196 Ark. 72, 116 S.W.2d 345, 347 (1938); *Etchison v. Dail*, 182 Ark. 350, 31 S.W.2d 426, 427 (Ark.1930); *Brown v. Copp*, 105 Cal.App.2d 1, 232 P.2d 868, 871 (1951); *Hawley v. McCabe*, 117 Conn. 558, 169 A. 192, 194 (1933); *Ward v. Parks*, 166 Ga. 149, 142 S.E. 690, 692 (1928); *Manson v. Berkman*, 356

Alaska's recording system utilizes a "grantor-grantee" index. Had Sabos searched title under both grantor's and grantee's names but limited his search to the chain of title subsequent to patent, he would not be chargeable with discovery of the pre-patent transfer to Horvath.

On one hand, we could require Sabo to check beyond the chain of title to look for pretitle conveyances. While in this particular case the burden may not have been great, as a general rule, requiring title checks beyond the chain of title could add a significant burden as well as uncertainty to real estate purchases. To a certain extent, requiring title searches of records prior to the date of a grantor acquired title would thus defeat the purposes of the recording system. The records as to each grantor in the chain of title would theoretically have to be checked back to the later of the grantor's date of birth or the date when records were first retained.

On the other hand, we could require Horvath to rerecord his interest in the land once title passes, that is, after patent had issued to Lowery. As a general rule, rerecording an interest once title passes is less of a burden than requiring property purchasers to check indefinitely beyond the chain of title.

It is unfortunate that in this case due to Lowery's double conveyances, one or the other party to this suit must suffer an undeserved loss. We are cognizant that in this case, the equities are closely balanced between the parties to this appeal. Our decision, however, in addition to resolving the litigants' dispute, must delineate the requirements of Alaska's recording laws.

Because we want to promote simplicity and certainty in title transactions, we choose to follow the majority rule and hold that the Horvaths' deed, recorded outside the chain of title, does not give constructive notice to the Sabos and is not "duly recorded" under the Alaskan Recording Act, AS 34.15.290. Since the Sabos'

interest is the first duly recorded interest and was recorded without actual or constructive knowledge of the prior deed, we hold that the Sabos' interest must prevail. The trial court's decision is accordingly.

REVERSED.

---

III. 20, 190 N.E. 77, 79 (1934); *Blumenthal v. Serota*, 129 Me. 187, 151 A. 138, 141 (1930); *Smith v. Williams*, 132 Okl. 141, 269 P. 1067, 1073 (1928); *Brown v. Ackerman*, 17 S.W.2d 771 (Tex.Civ.App.1929).