CULPEPPER, Judge.
This suit for damages .arises out of an automobile accident. Plaintiffs are Mrs. Willie Mae Fruge, driver of one of the vehicles, and her husband, Samson Fruge, representing the marital community and their minor children, who were passengers in the Fruge automobile. Defendants are Camille Coleman, driver of the other vehicle, and his liability insurer, American Service Mutual Insurance Company. From an adverse judgment, defendants appealed. Plaintiffs answered the appeal, seeking increases in the awards.
The issues are (1) negligence on the part of the defendant, Coleman, (2) contributory negligence on the part of the plaintiff, Mrs. Fruge, and (3) quantum.
The scene of the accident is on Louisiana State Highway No. 104, about one-half mile east of the Town of Mamou. This is a two-way, two-lane thoroughfare, of blacktopped construction and runs generally east and west. A parish road leaves the north side of the highway, forming a T-intersection. The speed limit is 50 miles per hour. It had been raining and the road was wet.
Mrs. Fruge was driving her Ford Mustang automobile in a westerly direction approaching the intersection. Coleman was driving in an easterly direction. He turned left at the intersection onto the parish road. Mrs. Fruge applied her brakes and veered to her left into the east-bound lane of travel to avoid Coleman. She did not strike Coleman but did strike the automobile of Havard Smith, which had been following Coleman and had stopped about 75 feet west of the intersection in the eastbound lane.
Mrs. Fruge’s version of the accident is as follows: She approached the intersection and slowed her vehicle to about 40 or 50 miles per hour. Coleman was going very slow, or had stopped, with his left-turn signal light operating. She assumed he was going to yield the right of way to her. She accelerated somewhat, but when she reached a point approximately 20 feet from defendant’s automobile, he suddenly turned directly into her path. Mrs. Fruge attempted evasive action, by applying her brakes and swerving to the left into the east-bound lane. However, she started skidding and struck the Smith automobile which had stopped behind Coleman.
*648 Plaintiff’s version of the accident is substantially corroborated by Havard Smith, who was actually called as a witness by defendant. Smith testified he was following about 75 feet behind the Coleman automobile. He thought Coleman slowed down, but did not completely stop. When Coleman turned left, Smith saw the Fruge vehicle for the first time. He estimated it was 75 or 80 feet from the intersection. It was Smith’s opinion that Mrs. Fruge “had to take it to the left” to avoid colliding with the Coleman vehicle in the intersection.
Coleman ,and the witnesses in his automobile gave a different version. They said that when Coleman turned left Mrs. Fruge was one-half block or one block away; and that as they were turning they saw the Fruge vehicle “zig-zag” and start sliding down the road. Defendants’ witnesses testified they had cleared the intersection and were traveling down the parish road when the collision occurred. They kept on traveling and did not even go back to the scene of the accident.
The District Judge resolved this conflict in testimony by finding the accident occurred in the manner described by Mrs. Fruge. We are of the opinion that even if the facts are those described by defendants’ own witness, Mr. Smith, Coleman is negligent.
COLEMAN’S NEGLIGENCE
Our statutory law, LSA 32:122, provides that a left turning driver at an intersection shall yield the right of way to vehicles approaching from the opposite direction “which are within the intersection or so close as to constitute an immediate hazard.” There are many cases in our jurisprudence holding that a left turn is a dangerous maneuver, requiring a high degree of care. Price v. Malone, 205 So.2d 125 (La.App. 2d Cir.1967); Bankston v. Bueche, 206 So.2d 532 (La.App. 1st Cir. 1968). Under these rules, it is clear that Coleman was negligent. If the Fruge vehicle was traveling 40 to 50 miles per hour, it was traversing 59 to 74 feet per second. Even under the testimony of defendants’ own witness, Mr. Smith, that Mrs. Fruge was 75 or 80 feet from the intersection at the time Coleman turned left, there was “an immediate hazard.”
CONTRIBUTORY NEGLIGENCE OF MRS. FRUGE
Defendants contend Mrs. Fruge was con-tributorily negligent in exceeding the speed limit of 50 miles per hour. Smith testified he thought Mrs. Fruge was going 50 or 60 miles an hour. Coleman and his passengers testified plaintiffs’ vehicle was going “fast”. Of course, plaintiff and her witnesses said she was not exceeding 50 miles per hour.
The physical facts are not of much assistance. The blacktopped pavement was wet and slippery. The evidence does not show the length of Mrs. Fruge’s skid-marks prior to the point of impact. Accepting as true Smith’s testimony that Mrs. Fruge was 75 or 80 feet from the intersection when Coleman turned left and that Smith’s vehicle was about 75 feet west of the intersection at the time of impact, we see that Mrs. Fruge had a distance of about 150 feet within which to stop her automobile. We conclude there was nothing about the physical facts to show that Mrs. Fruge was exceeding the speed limit of 50 miles per hour.
Defendant argues further that since the road was slippery and he was slowing down to make a left turn, the conditions were such that Mrs. Fruge should have reduced her speed below 50 miles per hour. He cites cases holding that the right to operate a motor vehicle at the maximum speed is conditional, depending upon the weather and the traffic hazards existing at the time. Beauregard v. Salmon, La.App., 205 So.2d 634. But, under the facts found, Mrs. Fruge first slowed and then, assuming defendant was yielding the right of way, accelerated. We *649 think she acted reasonably. It is our conclusion defendant has failed to sustain the burden of proving the facts of the present case fall within the jurisprudence cited. We find Mrs. Fruge was free of contributory negligence.
QUANTUM
Immediately after the accident, on February 12, 1967, Mrs. Fruge and her children were taken to the Savoy Memorial Hospital where they were seen by Dr. Frank T. Savoy, Jr. This physician diagnosed Mrs. Fruge’s injuries as a “very definite and severe whiplash” to her neck and back. She was placed in cervical traction and remained in the hospital for five days. On her release she wore a cervical collar for about two months. Four months after the accident she attempted to return to work as a beautician but was unable to do so because of pain in the cervical region. Finally, in January of 1968, eleven months after the accident, she returned to work. The District Judge found she was actually disabled for a period of about eight months.
For these injuries the trial court awarded Mrs. Fruge $3,000 in general damages. We think the award was clearly within the range of the great discretion of the trier of fact as to the quantum of damages in personal injury cases; Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967).
The District Court awarded Mrs. Fruge $1,760 for loss of earnings. Mrs. Fruge testified she had net earnings of about $55 per week from the operation of a beauty shop and that she was disabled for a period of fifty-two weeks, with a loss of earnings of $2,540. The Trial Judge found the evidence is “not too clear as to exactly what she earned and what her expenses were to operate the shop.” He also found she was actually disabled for only eight months. The evidence clearly justifies this evaluation. Certainly there is no abuse of discretion.
The Trial Court also awarded $240, representing the cost of hiring a maid to do the housework during Mrs. Fruge’s convalescence. Defendant says it is not proved that Mrs. Fruge needed such a maid. We find the Trial Judge was correct and affirm this award.
Of the children, Pamela Fruge was the most seriously injured. She was rendered unconscious and had symptoms of a concussion. For the first forty-eight hours she was nauseated and complained of headache. Her symptoms cleared rapidly, however, and she was discharged from the hospital after five days. The Trial Court awarded $750 as general damages for Pamela’s personal injuries. This .award was neither excessive nor inadequate.
The other three children, Darlene, Delia and Sophia, were each awarded $100 in general damages for minor bumps and bruises. These awards are clearly within the range of the discretion of the Trial Judge.
Defendants point out that the awards for damages caused by personal injuries to Mrs. Fruge exceed the policy limit. These awards are as follows: general damages, $3,000; wages for domestic help, $240; loss of earnings, $1,760; and medical expense, $293.66, for a total of $5,293.66. This exceeds the policy limit of $5,000 for damages caused by bodily injuries to one person.
For reasons assigned, the judgment appealed is amended to limit the liability of the defendant, American Service Mutual Insurance Company, for damages caused by personal injuries to Mrs. Willie Mae Fruge, to the principal amount of $5,000, plus legal interest from date of judicial demand until paid. Otherwise than as herein amended, the judgment is affirmed. All costs of this appeal are assessed against the defendants appellants.
Affirmed, as amended.