Melba GUIN, Appellant,

v.

Young H. HA, M.D., Appellee.

No. 3742.

Supreme Court of Alaska.

March 16, 1979.

H. Bixler Whiting, of Whiting & Rosie, Fairbanks, for appellant.

Marcus R. Clapp and Doris R. Ehrens, of Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

BOOCHEVER, Justice.

This case arises out of a medical malpractice suit brought by Melba Guin, appellant, against Young H. Ha, M.D., appellee. The principal issue raised on appeal requires us to determine if an insurer is liable for prejudgment interest which, when added to liability damages, exceeds the limitation on liability under the applicable insurance contract. This narrow issue is one of first impression in Alaska. A subsidiary question involves the determination of the proper rate of interest under Alaska's general interest statute. We have concluded that the insurer is not liable for prejudgment interest in excess of policy limits, and we do not reach the subsidiary issue.

Dr. Young H. Ha performed surgery upon Melba Guin on or about July 8, 1974. In the course of the surgery, Dr. Ha accidentally severed the radial nerve in Guin's right arm, partially paralyzing her right hand. In June of 1975, Guin brought suit against Ha to recover damages for the injuries she sustained as a result of the operation. Dr. Ha's answer denied liability. After partial discovery and pretrial skirmishing, the parties entered into settlement negotiations and reached a tentative settle-

ment agreement which fixed damages at $150,000.00.

Dr. Ha carried three insurance policies protecting him against malpractice liability. The first layer of protection, issued by Manufacturers and Wholesalers Indemnity Exchange, provided $25,000.00 coverage. The second layer provided coverage between $25,000.00 and $100,000.00 and the third layer provided coverage above $100,000.00. The present appeal involves only the first layer of coverage. Manufacturers and Wholesalers Indemnity Exchange is represented by Alaska Guaranty Association (hereinafter "Alaska Guaranty" or "insurer").[1] Alaska Guaranty denied liability, responsibility, or coverage for prejudgment interest, contending that its liability was limited to $25,000.00, exclusive of costs and attorney's fees.

Complications involving the second and third layer insurance carriers delayed final settlement, but an acceptable settlement agreement was ultimately concluded between Guin and Ha on July 13, 1977, some three years after the date of the operation. Under the terms of the agreement, Alaska Guaranty agreed to pay to Guin a total sum of $28,519.54, representing the limits of liability ($25,000.00), costs ($919.54), and attorney's fees ($2,600.00). In consideration of this sum, Guin released Ha and Alaska Guaranty of further liability for injuries arising out of the operation, expressly reserving, however, the issue as to the insurer's liability for prejudgment interest in excess of policy limits. The parties agreed to submit that issue to the superior court for declaratory judgment on stipulated facts.[2]

On July 26, 1977, the parties filed with the superior court a stipulation of facts and request for declaratory relief. The stipulation recited the terms of the settlement and requested the court to resolve two points of contention between the parties, to wit: the insurer's liability for prejudgment interest and the rate of such interest, if the insurer was found liable.[3]

Based upon the stipulated facts, memoranda submitted by the parties, and oral argument before Judge Gerald Van Hoomissen, the superior court denied Guin's motion for declaratory judgment and granted declaratory judgment in favor of Alaska Guaranty. Finding that prejudgment interest is an element of damages under Alaska law, the court concluded that the insurer was not obligated to pay such interest in excess of the policy's damage limits.

From this order denying her motion for declaratory judgment, appellant Guin appeals.

1. Alaska Guaranty Association is a nonprofit incorporated legal entity created by the Alaska Insurance Guaranty Association Act, AS 21.-80.010–21.80.190. The purpose of the act is "to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer . . ." AS 21.80.010. The insolvency of Manufacturers and Wholesalers Indemnity Exchange has no bearing on the resolution of the legal issue here presented since "the association [is not] obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises." AS 21.80.060(a)(1).

2. Only the issue of the insurer's liability for prejudgment interest is before this court. Dr. Ha was released of liability for prejudgment interest under the terms of the settlement. In the absence of such release, however, he or one of the other insurance companies would remain responsible for such interest under AS 45.45.-010(a) regardless of Alaska Guaranty's liability. AS 45.45.010(a) provides, in pertinent part:

> *Legal Rate of Interest.* (a) The rate of interest in the state is eight per cent a year and no more on money after it is due . . . . .

3. Specifically, the stipulation and request provided:

> The purpose of this Stipulation is to ask the court to resolve the question by declaratory judgment, of whether Alaska Guaranty Company is obligated to pay in addition to their policy limits, prejudgment interest and whether prejudgement interest is computed from the day of injury at a rate of 8% per annum pursuant to the provisions of AS 45.-45.010(a) reinacted by Session Laws of Alaska, Chapter 159, increasing the interest rate from 6% to 8% effective September 12, 1976, or whether the interest rate is computed at 6% per annum from the date of the injury, July 8, 1974, until September 12, 1976, and thereafter at 8% per annum until paid.

Alaska's general interest statute, AS 45.45.010, provides in subsection (a) that the rate of interest in the state is eight per cent per year on money after it is "due." In prior Alaska cases,[4] we have held that money becomes "due" within the meaning of AS 45.45.010(a) when the cause of action accrues. Thus, AS 45.45.010(a) imposes on defendants in tort actions the obligation to pay prejudgment interest computed from the date of injury.

In this appeal, the central issue is whether the obligation to pay prejudgment interest exceeding policy limits should be shifted from an insured defendant, who is concededly liable for such interest, to an insurer with whom the defendant holds a policy.[5] An obligation to pay such interest does not arise by virtue of the mere fact that the parties have entered into an insurance contract. In order to hold the insurer liable for such prejudgment interest, the insurer must have assumed such an obligation in the contract or, alternatively, public policy must intervene and impose the obligation despite the terms of the insurance contract.[6]

Guin argues that since a tort defendant is liable for prejudgment interest, public policy requires that the defendant's insurance carrier should be liable for such interest, regardless of policy language, because the insurance company has the use and benefit of the money between the date of injury and the date of judgment.

On the other hand, Alaska Guaranty argues that the obligations owed by the insurance carrier to its insured are defined exclu-

sively by the insurance contract. Relying on prior decisions of this court which have characterized prejudgment interest as damages, the insurer argues that it is not liable for such interest to the extent that it exceeds the limitation on damages contained in the policy.

We shall first examine the insurance contract to determine if it imposes upon the insurer an obligation to pay prejudgment interest in excess of policy limits. We shall then turn to an analysis of the public policy arguments advanced by Guin to determine if they require insurers to assume liability for prejudgment interest exceeding policy limits regardless of the terms of the insurance contract.

## THE INSURANCE CONTRACT

Judicial tribunals are particularly sensitive to the rights of both the insured and third parties when disputes arise concerning the coverage afforded by insurance contracts. In the past, we have carefully avoided strict adherence to traditional contractual principles in insurance cases, preferring to adopt a more flexible approach when insurance policies are involved:

The purpose of contract interpretation is to ascertain and effectuate the reasonable expectations of the parties. We have noted, however, that interpretation of insurance contracts is controlled by somewhat different standards. This is due, in part, to the inequality in bargaining power and to the fact that certainty is required to ascertain rates. An insurance

---

4. See *National Bank of Alaska v. J. B. L. & K. of Alaska, Inc.*, 546 P.2d 579, 590 (Alaska 1976); *Phillips v. State*, 470 P.2d 266, 274 (Alaska 1970).

5. Under the terms of the settlement, Dr. Ha's third layer insurer was released of further liability upon payment of $65,829.17 to Guin. Dr. Ha's second layer insurer has refused all coverage and is not a party to the settlement. Given these facts, we find it unnecessary to consider the possible liability of Dr. Ha's second and third layer insurance carriers.

6. The facts giving rise to this appeal are not in dispute. The issues presented are purely questions of law, relating to the interpretation of

language in an insurance contract and matters of public policy. In such cases, "interpretation of the words of the contract is treated in the same manner as questions of law . . . ." *National Bank of Alaska v. J. B. L. & K. of Alaska, Inc.*, 546 P.2d 579, 586 (Alaska 1976). On questions of law, this court is not bound by the lower court's decision; consequently, the "clearly erroneous" standard used in reviewing a trial court's factual findings is inapplicable. *Day v. A & G Construction Co.*, 528 P.2d 440, 443 n.3 (Alaska 1974). Our duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy.

policy may be considered a contract of adhesion, and as such, should be construed to provide the coverage which a layperson would have reasonably expected, given a lay interpretation of the policy language. It is not required that ambiguities be found in the policy language as a condition precedent for such construction.

*Stordahl v. Government Employees Insurance Co.,* 564 P.2d 63, 65–66 (Alaska 1977) (footnotes omitted). This approach, however, is not to be used as an instrument for ignoring or rewriting insurance contracts. An insurance policy is essentially contractual in nature. Thus, "the liability of an insurer and the extent of the loss under a policy of liability or indemnity insurance must be determined, measured, and limited by the terms of the contract." 15 G. Couch, Cyclopedia of Insurance Law § 56:1 (2d ed. 1966). Against the background of these principles, we turn to an examination of the insurance contract in this case.

■ The provisions of the insurance policy, insofar as they are relevant to the issue of prejudgment interest, provide:

## MALPRACTICE LIABILITY

. . . . .

2. NOW WE THE UNDERWRITERS hereby agree, subject to the terms, limitations, exclusions and conditions of this Insurance, to pay on behalf of the Assured all sums which the Assured shall by law be held liable to pay for damages arising out of bodily injury or mental injury to or death of any patient caused by or alleged to have been caused by error, omission or negligence in professional services rendered or which should have been rendered (hereinafter referred to as Malpractice),

. . . . .

3. As respects the coverage afforded by this Insurance, the Underwriters will defend any claim or suit in the name of and on behalf of the Assured and will pay the costs and expenses incurred in such defence. . . .

4. Irrespective of the number of persons or entities named as Assured in the Schedule or added by endorsement, the liability of the Underwriters hereunder for damages shall not exceed the limit of liability set out in the Schedule in respect of any one patient, nor the limit of liability set out in the Schedule in respect of all claims made against the Assured during the currency of this Insurance . . ., except that, subject to the provisions contained in Paragraph 3, the Underwriters will pay the costs and expenses incurred in the defence of any claim or suit.

. . . . .

Under paragraph 2, the insurer has agreed to pay "all sums which the Assured shall by law be held liable to pay for damages." Pursuant to paragraph 4, the damage liability clause is subject to an amount limitation of $25,000.00. Under paragraph 3, the insurer has agreed to defend the insured and to pay the "costs and expenses incurred in such defence." This supplemental payment clause is not subject to any amount limitation. Furthermore, under paragraph 4, costs and expenses are made payable by the insurer in addition to the otherwise applicable limit on damage liability. Finally, interest is nowhere mentioned in the contract of insurance.

Nothing in the supplemental payment clause can be construed as imposing upon the insurer the obligation to pay prejudgment interest. Alaska Guaranty's promise to pay all "expenses" incurred in the defense of the suit would extend to the expense of investigation, of hiring attorneys to defend the action, and the like. Prejudgment interest cannot reasonably be viewed as an expense of defense.[7]

■ Alaska Guaranty's promise to pay all "costs" incurred in the defense of the suit would not, in common understanding, include prejudgment interest.[8] Costs would

---

7. *See Factory Mut. Liab. Ins. Co. of Amer. v. Cooper,* 106 R.I. 632, 262 A.2d 370, 373 (1970).

8. *See Dittus v. Geyman,* 68 Mich.App. 433, 242 N.W.2d 800, 803 (1976); *Factory Mut. Liab.*

include those items that a court is authorized to tax against the party not prevailing in the action.[9] Alaska does not include prejudgment interest among the items allowed as costs.[10] That prejudgment interest is not to be construed as a cost is reinforced by the reasoning of Alaska cases which have held prejudgment interest to be in the nature of compensatory damages.[11]

 The heart of the present controversy involves the damage liability clause in which Alaska Guaranty has agreed to pay "all sums which the Assured shall by law be held liable to pay *for damages*" (emphasis added). Alaska Guaranty's liability under this clause is limited to $25,000.00. Guin demands interest on this amount for the three-year period prior to settlement. Alaska Guaranty argues that

> prejudgment interest falls within the provisions of the policy applicable to damages and the $25,000 limitation of the amount thereof, and the amounts of the judgment for damages which are in the form of prejudgment interest and which exceed the policy limits are not the insurer's obligation.

The issue, therefore, is whether prejudgment interest is an item of "damages" within the damage liability clause. We believe that our prior decisions establish, in accordance with the great weight of authority, that prejudgment interest is an item of compensatory damages.

In *State v. Phillips,* 470 P.2d 266 (Alaska 1970), we construed Alaska's general interest statute, AS 45.45.010(a),[12] to allow an award of prejudgment interest on damages recovered in a wrongful death action. Our holding was based on our interpretation of legislative intent and recognition of "the economic fact that money awarded for any reason is worth less the later it is received." *Id.* at 273.

In *Davis v. Chism,* 513 P.2d 475, 481 (Alaska 1973), we clarified the reasoning in *Phillips.* In *Davis,* the defendant made an offer of judgment, pursuant to Alaska Civil Rule 68, which was refused by the plaintiff. The jury returned a verdict for $18,000.00, a sum less than the amount of the offer, to which the trial court added prejudgment interest in excess of $3,000.00. *Id.* at 480. The addition of prejudgment interest increased the plaintiff's recovery to an amount in excess of the offer of judgment. Alaska Civil Rule 68 imposed certain costs on the offeree "[i]f the judgment finally obtained by the offeree is not more favorable than the offer . . . ." Defendant argued that, in order to make the comparison, prejudgment interest should have been added to his offer of judgment. We rejected this argument, reasoning that prejudgment interest is in the nature of compensatory damages and, therefore, should be included in the amount offered for settlement in comparing the offer with the "judgment finally obtained." Specifically, we stated:

> Because pre-judgment interest is in the nature of compensatory damages, it is reasonable for the trial court to include that figure in the 'judgment finally obtained by the offeree' and to compare that total to the amount of the offer of judgment. By the same token, it seems reasonable to conclude that an offer of judgment that contains only a single figure (plus costs) would include all sums which the defendant believes will fairly compensate the plaintiff for all damages sustained, including the damage resulting from deprivation of the use of the money between the date the cause of action accrued and the date of the offer.

513 P.2d at 481. We concluded:

> In our view pre-judgment interest is in the nature of compensatory damages. We hold that an offer of judgment that

---

*Ins. Co. of Amer. v. Cooper,* 106 R.I. 632, 262 A.2d at 373.

**9.** *See* AS 09.60.010 and Alaska Civil Rule 54 promulgated thereto.

**10.** *See* Alaska Civil Rules 79(b) and 82.

**11.** *See National Bank of Alaska v. J. B. L. & K. of Alaska, Inc.,* 546 P.2d 579, 590–91 (Alaska 1976); *Davis v. Chism,* 513 P.2d 475, 481 (Alaska 1973).

**12.** *See* note 2 *supra.*

specifies only a total sum must be construed as including the defendant's assessment of all of the damages that plaintiff is entitled to, including that occasioned by the loss of use of the money. *Id.* at 482.

Appellant Guin asks this court to limit *Davis's* characterization of prejudgment interest to the specific context in which the case was decided, that is, Alaska Civil Rule 68 offers of judgment. This we decline to do. First, there is a complete lack of language in *Davis* indicating that it was intended to be so limited. More important, however, is *Davis's* reliance on *Phillips* and its explicit clarification of the reasoning in *Phillips. Davis's* classification of prejudgment interest rested in part upon the theory that such interest is necessary in order to make the plaintiff whole, for he has lost the use value of the damages eventually awarded. This economic maxim applies with as much force to the case at bar as it does to Civil Rule 68 offers of judgment. We adhere to our reasoning in *Davis* and reaffirm the principle that prejudgment interest is an item of compensatory damage. So classified, prejudgment interest falls within the liability damage clause in the insurance contract and is subject to the amount limitation contained therein. Thus, when an insurer pays on behalf of its insured the limits of liability coverage to an injured third party, it discharges its obligation under the insurance policy.

Classification of prejudgment interest as an item of damages clarifies, in other respects, the obligations the insurer owes to the insured. While the insurer will not be liable for prejudgment interest in excess of the applicable damage limitation, the insurer will be liable for any prejudgment interest which, when added to damages rendered against the insured, does not exceed the limitation on liability. Thus, the insurer may be obligated to pay prejudgment interest assessed against its insured despite the absence of a clause specifically addressed to prejudgment interest in the insurance contract.

■ Unlike many liability insurance contracts, the agreement between Alaska Guaranty and Dr. Ha does not obligate the insurer to pay interest accruing after entry of judgment.[13] We note, however, that an obligation to pay post-judgment interest would arise on behalf of the insurer when judgment is rendered against the insured or a settlement agreement is finalized. Upon the occurrence of either event, the insurer would become obligated to make payment under its agreement to pay a sum "which the Assured shall by law be held liable. to pay for damages." The insurer's obligation would therefore become "due" within the meaning of AS 45.45.010(a).[14] Thus, the insurer would be responsible for interest accruing after the date of entry of judgment or settlement.[15]

While we believe that prior Alaska cases make clear the proper disposition of this case, our reasoning and conclusions are reinforced by decisions from other jurisdictions. Most other jurisdictions have classified prejudgment interest as an item of damages.[16] Furthermore, the results

---

**13.** Under many standardized liability insurance contracts, the insurer promises to pay all interest accruing *after* entry of judgment, and before the insurer has paid, tendered or deposited in court that part of the judgment which does not exceed the limit of the insurer's liability thereon. For example, see the contract involved in *Factory Mut. Liab. Ins. Co. of Amer. v. Cooper,* 106 R.I. 632, 262 A.2d 370, 372 n.4 (1970).

**14.** *See* note 2 *supra.*

**15.** The insurer's obligation to pay post-judgment interest did not arise in this case because

Alaska Guaranty made its payment to Guin prior to the date of settlement.

**16.** *See Laplant v. Aetna Casualty & Surety Co.,* 107 N.H. 183, 219 A.2d 283, 285 (1966) ("[T]he undertaking of the insurer obligates it to pay only so much of the interest accruing from the date of the writ to the date of the judgment as when added to the face of the verdict equals the limit of the policy."); *Factory Mut. Liab. Ins. Co. of Amer. v. Cooper,* 106 R.I. 632, 262 A.2d 370, 373 (1970); *Houser v. Eckhardt,* 35 Colo.App. 155, 532 P.2d 54, 57 (1974) ("[P]rejudgment interest is in the nature of another item of damages."), *aff'd, Security Ins. Co. of Hartford v. Houser,* 552 P.2d 308 (Colo.1976);

reached by other jurisdictions with respect to the specific issue of whether the insurer is obligated to pay prejudgment interest in excess of policy limits persuade us that the insurer is not so obligated.

The leading case in the area is probably *Factory Mutual Liability Insurance Co. of America v. Cooper*, 106 R.I. 632, 262 A.2d 370 (1970). Factory Mutual's insured was held liable for damages to third parties injured in an automobile accident covered by the insurance policy. The policy limit for liability was $20,000.00; the judgment exceeded this amount. A Rhode Island statute directed that interest be added to the amount of damages recovered in personal injury actions, computed from the date of the commencement of the action.[17] The insurer brought a suit to determine its liability to pay prejudgment interest to the insured's judgment creditors. The court

framed the issue in terms similar to the issues presented here:

> The only question raised by this appeal is whether, under the provisions of the policy involved in this action, plaintiff is obligated to pay, in excess of its policy limit, interest added to the verdicts in accordance with [Rhode Island law].

106 R.I. 632, 262 A.2d at 372. The court held that the insurer is not liable for prejudgment interest in excess of policy limits.

In arriving at this conclusion, the court looked to the language of the insurance policy, which it held governed the result. *Id.* at 372. The court first examined the extent of the *insureds'* liability and found that they were "legally obligated to pay as *damages*" the entire judgment rendered against them, including prejudgment interest added to the verdict pursuant to stat-

*Busik v. Levine*, 63 N.J. 351, 307 A.2d 571, 576 (1973) (dicta) ("[T]he carrier's obligation to pay the judgment plainly includes the obligation to pay the constituent elements of damage incorporated in that judgment, among which, of course, is the item of prejudgment interest."). One court has sidestepped the issue, because the amount of the verdict alone exceeded the policy limits. *See Westchester Fire Ins. Co. v. Ring Bros. Heating Co.*, 491 F.2d 711, 712 (6th Cir. 1974) ("Arguably, [the insurer] might be liable under its insuring clause for interest from the date of filing the complaint if the inclusion of that amount would not exceed policy limits. That question, however, is not before us and we do not decide it."). One court has squarely held that prejudgment interest is not an item of damages within the policy language. *Dittus v. Geyman*, 68 Mich. App. 433, 242 N.W.2d 800, 803 (1976). The court nevertheless imposed upon the insurer liability for prejudgment interest based on public policy. It then held that the insurance company was liable for prejudgment interest only up to the limits of the policy. The court's reasoning, as the dissent points out, is inconsistent.

17. The statute, R.I.Gen.Laws § 9–21–10 (1970), which has subsequently been amended, provided specifically:

> *Interest in action for damages to the person or to property.*—In causes of action and actions for damages to the person or to real and personal estate in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages, interest thereon from the date of commencement of

the action which shall be included in the judgment entered therein.

*See* 1966 R.I.Pub.Laws, ch. 1, § 10. The wording of Rhode Island's interest statute differs from the wording of Alaska's general interest statute, AS 45.45.010(a), in two respects, but neither difference leads us to depart from the reasoning in *Factory Mutual*. First, the Rhode Island statute explicitly provides that the clerk of the court *add* interest to the verdict rendered for pecuniary damages. *Davis v. Chism*, 513 P.2d 475 (Alaska 1973), makes clear, however, that this is the procedure used in Alaska—prejudgment interest is added to the verdict returned by the jury. Furthermore, Rhode Island's characterization of prejudgment interest as an item of *damages* parallels this court's reasoning, as enunciated in *Davis*. Second, the Rhode Island statute provides for the addition of interest from the date of the commencement of the action, while Alaska's statute has been interpreted to provide for addition of interest from the date the cause of action accrues. *State v. Phillips*, 470 P.2d 266, 274 (Alaska 1970). This difference changes only the *date* at which interest begins to accrue on an amount later made certain. The essential character of the statutory sums—prejudgment interest— and the purpose in providing for the addition of such sums—compensation of the plaintiff for loss of use value—are the same.

It is interesting to note that Rhode Island subsequently amended its general interest statute to provide for interest from the date the cause of action accrues. *See* R.I.Gen.Laws § 9–21–10 (Supp.1977).

ute.[18] *Id.* at 373. The court next turned to the obligation of the insurance company:

> The obligation of the plaintiff is, of course, different from that of the insureds. The latter remain liable for the total amount of the judgments, but the liability of the plaintiff insurance company is limited to the policy limit of $20,000, plus the supplementary payments which it is obligated to make under the "Supplementary Payments" provision in Part I of the policy. We hold that the plaintiff is not obligated to pay as "damages" interest in excess of its policy limit added to the verdicts under [Rhode Island's interest statute].

*Id.* at 373. Finally, the court concluded that prejudgment interest did not fall within any of the categories of supplementary payment obligations assumed by the insurer.

It would not be useful to detail the facts and reasoning of other cases which have adopted the rule of *Factory Mutual.* Although the relevant state statutes and insurance policy language have varied more or less from that involved here and in *Factory Mutual,* courts have resolved the legal issue in the same way: the insurance company is not liable under the insurance policy for prejudgment interest in excess of policy limits.[19]

## PUBLIC POLICY

Appellant Guin does not attempt to bring her claim for prejudgment interest within any express provision of the insurance policy. Rather, Guin relies on public policy, AS 45.45.010(a), and this court's decision in *State v. Phillips,* 470 P.2d 266 (Alaska 1970), to support her argument that Alaska Guaranty is obligated to pay prejudgment interest in excess of policy limits.

Upon close analysis of the rule announced in *State v. Phillips,* we believe plaintiff's reliance upon the case to be misplaced. In *Phillips,* we were faced with the task of construing Alaska's general interest statute, AS 45.45.010(a),[20] and a similar statute

---

18. The court later stated in the opinion, "[P]rejudgment interest is properly an item of damages included in the judgment to compensate a plaintiff for having waited for that to which he is legally entitled." *Id.* at 373.

19. *See Westchester Fire Ins. Co. v. Ring Bros. Heating Co.,* 491 F.2d 711 (6th Cir. 1974) (insurance policy providing for payment of interest "which accrues after entry of judgment" is not amended by Michigan statute allowing interest on money judgment from date of filing of complaint and does not obligate insurer to pay prejudgment interest in excess of policy limits); *Bossert v. Douglas,* 557 P.2d 1164 (Okl.App. 1976) (insurer's payment of policy limit toward satisfaction of judgment against insured in excess of policy limit discharges insurer's liability as to prejudgment interest, relying heavily on *Factory Mutual*); *Walker v. Walker,* 108 N.H. 341, 235 A.2d 520 (1967); *Laplant v. Aetna Cas. & Surety Co.,* 107 N.H. 183, 219 A.2d 283 (1966) (although tort defendant's liability to the tort plaintiff includes interest from the date of the writ to the date of the judgment, the insurer is obligated to pay only so much of the interest accruing from the date of the writ to the date of the judgment as when added to the fact of the verdict equals the limits of the policy); *Cleghorn v. Ocean Accident & Guar. Corp.,* 244 N.Y. 166, 155 N.E. 87 (N.Y.1926) (per curiam) (statute imposing upon insured the obligation to pay prejudgment interest is distinct from insurer's obligation, if any, to pay prejudgment interest, which is governed by the insurance contract); *Houser v. Eckhardt,* 35 Colo.App. 155, 532 P.2d 54 (1974) (the maximum amount of the insurer's obligation for the total of the jury verdict and any interest on the verdict accruing prior to judgment is the policy limit applicable to damages), *aff'd, Security Ins. Co. v. Houser,* 552 P.2d 308 (Colo.1976).

Of the many cases cited by Guin, only one, *Fruge v. American Serv. Mut. Ins. Co.,* 227 So.2d 646 (La.App.1969), arguably supports the conclusion that insurance carriers are liable for prejudgment interest in excess of policy limits. In *Fruge,* plaintiff recovered judgment in the amount of $5,293.66 against the insurer whose liability was limited to $5,000.00 under the applicable policy. A Louisiana statute provided for an award of prejudgment interest accruing from the date of judicial demand. The court limited the liability of the insurer to "the principal sum of $5,000, plus legal interest from the date of judicial demand until paid." *Id.* at 649. Although the court imposed liability for prejudgment interest in excess of policy limits, we find the case unpersuasive: the opinion contains no reasoning on the issue of prejudgment interest and cites no authority.

20. At the time the *Phillips* case was decided, AS 45.45.010(a) provided, in pertinent part:

> The rate of interest in the state is six per cent a year and no more on (1) money after it is due . . . .

governing interest to be awarded in actions against the state.[21] We held that these statutes authorized awards of prejudgment interest to successful tort plaintiffs because money was "due," within the meaning of the statutes, whenever the injury occurred. Our decision was in part based upon the practical economic fact that money is worth less the later it is received.

In *Phillips*, we dealt with the economic relationship between an injured tort plaintiff and a culpable tort defendant. *Phillips* did not involve rights and obligations arising under liability insurance agreements, which are executed between tort defendants and insurance carriers. Thus, the case does not purport to delineate the obligation of the insurer to pay prejudgment interest, even if the insured's obligation to pay such interest is clear.

■ Guin also attempts to find on behalf of the insurer an obligation to pay prejudgment interest based squarely on the language of AS 45.45.010(a), which provides that the rate of interest in Alaska is eight per cent on money after it is due. Guin argues that the policy limits were "due" from the insurer on the date of injury rather than the date of settlement. This contention we find untenable. Under this liability insurance policy, the insurer agreed to pay on behalf of the insured all sums which the "Assured shall by law be held liable to pay for damages." Until a valid judgment is rendered against the insured or a settlement agreement is entered into, the insured is not by law liable to pay damages to the injured party. Thus, the sum that the insurance company may eventually pay on behalf of the insured is not "Due" at the time of the injury, but rather at the time of settlement or judgment.

§ 25–1–1 ACLA 1949.

21. *See* AS 09.50.280, which provides:

> *Judgment for plaintiff.* If judgment is rendered for the plaintiff, it shall be for the legal amount found due from the state with legal interest from the date it became due and without punitive damages.

22. The insurance policy provides in part:

SPECIAL CONDITION

Finally, appellant Guin argues that general public policy considerations should persuade this court to impose upon the insurer the obligation to pay prejudgment interest in excess of policy limits. While policy considerations mentioned in some of our decisions may lend support to the rule advocated by Guin, we are not convinced that such factors should override the allocation of obligations contained in the insurance contract before us.

We recognize that under this insurance policy, like most liability insurance policies, the insured has relinquished to the insurer his right to settle claims and his right to control the litigation during the post-injury/prejudgment period.[22] From the date of the injury, it is the insurer who will have the use and benefit of any sums, up to the policy limit, later found to be owed to the injured party. Economic fairness would suggest that the insurer be held liable for prejudgment interest, without regard to policy limits, as it has had the use and benefit of funds during the period for which the defendant insured is being held liable. These notions of economic fairness, however, are not sufficient grounds for restructuring the contractual relationship between insured and insurer.

Similarly, we are not persuaded by the policy encouraging early settlement of claims that the insurer should bear the burden of prejudgment interest in excess of policy limits. This policy factor was given some weight in our decision in *State v. Phillips*, 470 P.2d 266 (Alaska 1970), where we stated:

> We are also influenced by the policy consideration that failure to award prejudgment interest creates a substantial finan-

It is a condition precedent to the right of the Assured to be defended or indemnified under this Insurance that . . . .

(4) the Assured shall not (without the written consent of Underwriters) admit liability for or settle any claim or incur any costs or expenses in connection therewith, or (without the consent of Underwriters duly appointed representative) give any oral or written statement to anyone in connection therewith.

cial incentive for defendants to litigate even where liability is so clear and the jury award so predictable that they should settle.[23]

*Id.* at 274. Encouraging early settlement where liability is clear is a salutary goal, but it does not require the insurer to bear the burden of a risk it has not assumed. Countervailing policy considerations favoring the insurer were expressed in *Dittus v. Geyman*, 68 Mich.App. 433, 242 N.W.2d 800, 805 (1976):

> The effect of allowing prejudgment interest in an amount beyond policy limits would be to force an insurance company to acquiesce to a plaintiff's demand at an early stage of the proceedings where it may have a meritorious defense, rather than run the risk of paying a large amount of prejudgment interest due to the delays engendered by crowded dockets should the plaintiff eventually recover.

Further, the insured has undertaken to bear the costs of defending the litigation which presumably will increase substantially in the advanced stages of trial preparation if settlement is delayed.

 Finally, the insured defendant will not be at the mercy of the dilatory or uncooperative insurance company. In every contract, including policies of insurance, there is an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.[24] This covenant encompasses an obligation on behalf of the insurer to accept reasonable offers of settlement in a prompt fashion. The insured defendant, for his part, both fulfills his contractual duty and protects his own interest by cooperating fully with his insurer. If the insurer causes undue delay in either settlement of a claim or in bringing a case to trial, it may constitute a breach of the implied covenant of good faith. The insured may recover from his insurer any prejudgment interest attributable to the bad faith of the insurer, regardless of policy limits.[25]

Furthermore, the insured defendant need not be caught in the bind of prejudgment interest liability. The insured may protect himself by obtaining additional insurance coverage in an amount sufficient to include prejudgment interest which otherwise would exceed applicable policy limits.

 We do not believe the result we reach to be unjust. Strong policy arguments exist on either side of the issue; in such a case, we find no compelling reason to override the provisions of the contract which the parties have entered into.

We affirm the judgment of the trial court.

---

**23.** Guin attempts to bring this case directly within the scope of this policy consideration by arguing that the liability of Ha and, therefore, Alaska Guaranty, was clearly established at an early date. Alaska Guaranty disputes this assertion. Although in *Phillips* we were influenced by this policy factor, we do not believe it to be a desirable point for distinguishing cases for purposes of developing a legal rule. In common practice, liability is seldom "clear." In those cases where it is not clear, but later found by a jury to be clear, the plaintiff suffers the same economic loss as in a case of transparent liability. The plaintiff is still entitled to prejudgment interest, and whether or not the insurer is so liable should not turn upon initially-perceived issues of liability.

**24.** *Crisci v. Security Ins. Co. of New Haven*, 66 Cal.2d 425, 58 Cal.Rptr. 13, 16, 426 P.2d 173, 176 (1967); *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal.2d 654, 657–58, 328 P.2d 198, 200–01 (1958).

**25.** *See Crisci v. Security Ins. Co. of New Haven*, 66 Cal.2d 425, 58 Cal.Rptr. at 16, 426 P.2d at 176; *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal.2d 654, 657–58, 328 P.2d at 200–01.