Monty D. MOORE, Appellant,

v.

STATE of Alaska, DEPARTMENT OF NATURAL RESOURCES; and American Copper & Nickel Co., Inc., Appellees.

No. S–8624.

Supreme Court of Alaska.

Nov. 26, 1999.

Thomas E. Meacham, Anchorage, for Appellant.

Lawrence Z. Ostrovsky, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee State of Alaska, Department of Natural Resources.

Joseph J. Perkins, Jr. and Barbara F. Fullmer, Guess & Rudd P.C., Anchorage, for Appellee American Copper & Nickel Company, Inc.

Before: MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

Pacific Rainier, Inc. (PRI) located and recorded mining claims on state-selected federal land. At the time, the federal government had not conveyed the land. Upon determining that PRI was not qualified to do business in Alaska, and thus not allowed to acquire mining rights in this state, the Commissioner of the Department of Natural Resources voided PRI's claims. The superior court upheld the commissioner's decision. The presi-

dent of PRI, Monty D. Moore, appealed to this court, arguing that a locator on state-selected federal lands does not acquire mining rights voidable by the state because the state has no rights to convey until the federal government tentatively approves the transfer. In addition, Moore argues that such rights accrue by operation of law upon tentative approval by the federal government, and under Alaska law he has two years after that approval to qualify to do business in Alaska and thus acquire the rights. We disagree. Because a locator acquires mining rights at the time of location, and the commissioner properly voided the rights PRI acquired, we affirm.

## II. FACTS & PROCEEDINGS

In early 1996, PRI located and recorded certificates of location under state law[1] to more than 200 mining claims and prospecting sites on land north of Denali Highway near Paxson. The locations were made on federal land that the state had selected pursuant to Section 6 of the Alaska Statehood Act;[2] however, the federal government had not yet "tentatively approved"[3] the state's land selection or transferred patent.

Later that year, American Copper & Nickel Company, Inc. (ACNC), a company claiming to have located, staked, and recorded many of PRI's locations before PRI had, informed the Division of Mining that PRI

was not a corporation qualified to do business in Alaska and therefore was not qualified to acquire exploration and mining rights under Alaska law. ACNC requested that the division resolve the issue as soon as possible because the conflicting claims were causing investors to withhold financing for ACNC's drilling program.[4] Shortly thereafter, the division director nullified and voided PRI's claims on the grounds brought forward by ACNC.

■ Moore appealed this decision to the Commissioner of the Department of Natural Resources (commissioner) and ACNC intervened.[5] Moore argued, among other things, that no rights were transferred from the state to PRI that were presently voidable by the state because PRI's selections were on federal lands. As such, he contended, the state had no mining rights to convey at the time of location, and thus there were no rights to void. Moore further asserted that under Alaska law, he had two years after the federal government tentatively approved the state's land selection to qualify to do business in Alaska and to obtain the mining rights to the locations.

In March 1997, the commissioner upheld the division director's decision, primarily on the basis that PRI was not qualified to engage in business in Alaska. In addition, the commissioner held that mining rights can be established on state-selected lands prior to

1. See AS 38.05.185–275.

2. Pub.L. No. 85–508, § 6(g), 72 Stat. 339, 341–42 (1958), reprinted in 48 U.S.C.A. note preceding § 21 (West 1987).

3. The act of issuing tentative approval constitutes the formal transfer of land management authority from the United States to the State of Alaska regarding any particular Statehood Act land selections. See id.:

Following the selection of lands by the State and the tentative approval of such selection by the Secretary of the Interior or his designee, but prior to the issuance of final patent, the State is hereby authorized to execute conditional leases and to make conditional sales of such selected lands....

4. ACNC indicated that the United States Bureau of Land Management had given ACNC permission to conduct drilling on the state-selected lands. The state concurred. Prior to conveyance from the United States to the state, a loca-

tor may obtain permits to drill from the federal land manager and other permitting authorities with the state's concurrence. See Alaska National Interest Lands Conservation Act § 906(k)(1), 43 U.S.C.A. § 1635(k)(1) (West 1986); see also 11 Alaska Administrative Code 86.115(a) (1999).

5. On appeal before this court, ACNC raises for the first time the claim that Moore is not the locator or owner of the claims in question, and lacks standing to assert claims on behalf of PRI. Moore responds that because he is the president and the sole shareholder of PRI, this court should hold that he has standing to defend the corporation's interests in administrative and judicial proceedings. Alternatively, Moore argues that ACNC has waived this issue because it failed to raise it below. Moore's latter contention is correct; failure to raise the issue of capacity to sue below results in a waiver of that defense. See Jackson v. Nangle, 677 P.2d 242, 250 n. 10 (Alaska 1984) (citations omitted).

tentative approval by the federal government, and that such claims are subject to Alaska mining laws. The commissioner upheld this decision on reconsideration. Moore then appealed to the superior court, which affirmed the decision.

This appeal followed.

## III.  *STANDARD OF REVIEW*

■ This case raises questions of law concerning the application of state mining laws. Because resolution of these questions does not require agency expertise, we employ the substitution of judgment test.[6] However, we give "some weight" to any long-standing agency statutory interpretation.[7] On questions of law, the duty of this court "is to adopt the rule of law that is most persuasive in light of precedent, reason and policy."[8]

## IV.  *DISCUSSION*

### A.  *Statutory Framework*

Under Alaska law, mining rights on state lands are acquired through the process of

6.  *See Handley v. State, Dep't Of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992).

7.  *See Peninsula Marketing Ass'n v. State,* 817 P.2d 917, 922 (Alaska 1991) (citing *State, Dep't Of Revenue v. Alaska Pulp America, Inc.,* 674 P.2d 268, 274 (Alaska 1983)).

8.  *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

9.  *See* AS 38.05.195.

10.  *See* 11 AAC 86.200–215 (1996). In addition, there are annual rent and labor requirements. *See* AS 38.05.210–211; *see also* 11 AAC 86.215–221 (1999).

11.  *See* AS 38.05.275, which provides in part:

(a) Mining locations made on state land, including shoreland, tideland or submerged land, or state selected land ... acquire for the locator mining rights ... subject to existing claims and to any denial of or restriction in the tentative approval of state selection or patent of the land to the state.
(b) In this section, "state selected land" ... means land for which the state has filed a selection application with the United States under Sec. 6 of the Alaska Statehood Act, as amended, regardless of the validity or effect of the application, if the selection described in the application has not been rejected or relinquished....

"location."[9] This process entails the discovery and marking of the claim, the posting of a notice at the claim site, and the recording of a certificate of location.[10] Through location, a locator acquires a mining claim priority against subsequent locators to the selected claims.[11]

Locations may be made on state-selected lands prior to the federal government's actual conveyance of the land to the state.[12] State-selected land is land for which the state has filed a selection application with the United States under Section 6 of the Alaska Statehood Act, regardless of the validity or effect of the application, if the selection has not been rejected or relinquished.[13] However, because the state does not have management authority over the land until tentative approval, the location is made at the locator's risk.[14] Nevertheless, locators of claims on state-selected land still acquire prior rights against subsequent locators; these prior rights, upon the land's conveyance, mature

12.  *See id.; see also* 11 AAC 86.115 (1999), which provides in part:

LOCATIONS ON STATE–SELECTED LAND.
(a) A location made on state-selected land that has not been conveyed to the state by the federal government through tentative approval or patent is made at the locator's risk. Because the state does not have management authority over the land unless the selection has been conveyed and cannot authorize exploration work or mining until that time, the locator is responsible for obtaining any necessary permits from the federal land manager and other permitting authorities.
(b) A location made on state-selected land in accordance with this chapter creates prior rights against subsequent locators and becomes a mining claim, leasehold location, or prospecting site when the federal government conveys the selection to the state through tentative approval or patent, whichever occurs first, unless the conveyance restricts or bars the location, or unless a state mineral closure is in effect on the date of conveyance. If a state leasing restriction is in effect on the date of conveyance, a location made before the conveyance is subject to that restriction. If the land is closed to mineral entry or restricted to leasing after the date of the conveyance, valid location that was made before the conveyance is unaffected.

13.  *See* AS 38.05.275(b); *see also* 11 AAC 86.115.

14.  *See* 11 AAC 86.115.

into mining claims, leasehold locations, or prospecting sites.[15]

Finally, in order for a foreign corporation to locate a mining claim in Alaska, it must be qualified to do business in the state.[16] To qualify, a foreign corporation must obtain a certificate of authority by registering with the Alaska Department of Commerce and Economic Development.[17] However, an unqualified corporation that acquires an interest in exploration or mining rights by operation of law has two years to become qualified or to dispose of the interest to a qualified person.[18]

### B. *PRI Acquired Mining Interests That Were Properly Voidable by the State.*

PRI took the proper steps to locate claims and thus acquire mining rights on locations near Paxon. As previously discussed, these rights are in the nature of a priority against subsequent locators.[19] Because the claims were on state-selected land that had not been conveyed by the federal government, PRI was an "at-risk" locator whose priority rights were contingent upon the federal government's tentative approval of the land selection.[20]

However, when the Division of Mining learned that PRI was not qualified to do business in Alaska because it failed to register with the Department of Commerce and Economic Development, the division voided and nullified PRI's mining claim priority rights. This extinguished any current or future claim based upon the voided locations. Moore does not challenge the division's finding that PRI was not qualified to conduct business in Alaska.[21]

█ Nevertheless, Moore argues—in spite of unambiguous statutory language to the contrary—that the commissioner erred as a matter of law in holding: (1) that a locator on state-selected lands acquires mining rights at the time of location, which would be subject to nullification for the locator's failure to be qualified to do business in the state; and (2) that Moore would not acquire mining rights by operation of law when the federal government tentatively approved the state-selected lands, and thus have two years from that time to qualify to do business in the state. He contends that because the state has no property interest in state-selected federal lands until tentative approval, the state has no interest to presently convey. According to Moore, the state only conveys an "ephemeral option" to "stand in line," or a "claim in waiting," which becomes a mining right by operation of law upon tentative approval. Thus, Moore contends that upon tentative approval PRI would acquire an interest in mining rights by operation of law and would then have two years to become qualified or to dispose of this interest to a qualified person.[22] We disagree.

█ First, we note that Moore appears to be dissecting the right of priority against subsequent locators out of the "bundle of sticks" comprising mining rights. However, a priority right is intertwined within that bundle. For this reason, Moore's argument is fatally flawed. If there is no mining right for the state to void, there is no mining right for the state to convey, including a mining claim priority contingent upon the ultimate conveyance of the land. Thus, Moore's locations on state-selected land would be worthless. In reality, the term "mining rights" is used both in AS 38.05.275(a) and in AS 38.05.190 and it means the same thing in both sections. Moore would have acquired "mining rights" under subsection 275(a) on state-selected land except that subsection

---

15. *See id.*

16. *See* AS 38.05.190(a)(5).

17. *See* AS 10.06.705–735; *see also* 11 AAC 88.185(33).

18. *See* AS 38.05.190(b).

19. *See* AS 38.05.275.

20. *See* 11 AAC 86.115.

21. In Moore's appeals before the commissioner and before the superior court, he argued that the locations were made on behalf of Pacific Rainer Roofing, Inc., a corporation qualified to do business in Alaska, and not PRI. However, he has abandoned this argument on appeal before this court.

22. *See* AS 38.05.190(b).

190(a) prohibits corporations not qualified to do business in Alaska from acquiring "mining rights." Since Moore's acquisition of "mining rights" would have been by location, not by operation of law, the operation of law exception of subsection 190(b) does not apply.

■ Second, the state does in fact have conveyable property interests in state-selected land prior to tentative approval by the federal government, albeit interests contingent upon that approval. The United States Supreme Court has held that where a state follows all of the appropriate selection procedures to perfect its land selection claims, it generally acquires vested rights in the selected land at the time of selection.[23] To this end, the Court stated:

> [I]t is ... well settled that a claimant to public land who has done all that is required under the law to perfect his claim acquires rights against the government and that his right to a legal title is to be determined as of that time, and also that this rule is based upon the theory that by virtue of his compliance with the requirements he has an equitable title to the land; that in equity it is his and the government holds it in trust for him. But it is said that, as the selection is subject to the approval of the Secretary of the Interior, no right can become vested, nor equitable title be acquired, thereunder, unless and until his approval is had, and therefore that the rule just stated is not applicable here. To this we cannot assent. The words relied upon are not peculiar to this land grant, but are found in many others. Their purpose is to cast upon the Secretary the duty of ascertaining whether the selector is acting within the law, in respect of both the lands relinquished and the land

selected, and of approving or rejecting the selection accordingly.[24]

Alaska case law also supports the proposition that the state acquires present, conveyable rights in lands selected by the state prior to tentative approval or conveyance by the federal government. In *Sabo v. Horvath*,[25] we held that a grantor who had not yet received his patent under the Alaska Homesite Act[26] nevertheless had a sufficient interest to convey the land by quitclaim deed.[27] We reasoned that Congress's silence on the issue of alienability in the Act was "quite significant" because Congress "knew how specifically to prohibit alienation."[28] We stated that though "various other events were necessary prior to the issuance of patent," the grantor had "complied with a substantial portion of his obligation under the statute and regulations ..." and the "mere fact that steps remained [to be taken] before issuance of [a] patent ..." did not preclude "the existence of an alienable right, where there has been basic compliance with the statutory demands."[29] Our reasoning in *Sabo* applies here.

Like the Homesite Act, the Statehood Act does not expressly prohibit the creation of *any* third-party interests in state-selected land prior to tentative approval by the federal government.[30] The state may not execute conditional leases or make conditional sales of such selected lands, but it is not expressly prohibited from establishing priority rights in third-persons through location.[31] Moreover, upon selection of lands, the state has complied substantially with applicable laws and regulations. Generally, all that remains to be done is a land survey, as well as review and approval by the federal government.[32] The rights the state acquires do not ensure tentative approval or ultimate transfer of

**23.** *See Wyoming v. United States,* 255 U.S. 489, 497, 41 S.Ct. 393, 65 L.Ed. 742 (1921); *Payne v. New Mexico,* 255 U.S. 367, 371, 41 S.Ct. 333, 65 L.Ed. 680 (1921).

**24.** *Payne,* 255 U.S. at 371, 41 S.Ct. 333.

**25.** 559 P.2d 1038 (Alaska 1976).

**26.** 43 U.S.C.A. § 687a (West 1986).

**27.** *See Sabo,* 559 P.2d at 1042.

**28.** *Id.*

**29.** *Id.*

**30.** *See* Alaska Statehood Act, Pub.L. No. 85–508, § 6(g), 72 Stat. 339, 341–42 (1958), *reprinted in* 48 U.S.C.A. note preceding § 21 (West 1987).

**31.** *See id.*

**32.** *See id.*

these lands, but they are more than mere expectancies. The state itself would have to take some action before it would lose the right to patent of selected land.[33]

In sum, the state has a present, substantial interest in state-selected lands prior to tentative approval by the federal government. Moreover, state law expressly grants prior rights to locators against subsequent locators on state-selected lands.[34] Recorded certificates of location memorialize an appropriation of a valuable property right from the state.[35] These rights become mining claims when the federal government conveys the selection to the state.[36] It is incorrect to assert these rights are merely "ephemeral claims in waiting." Rather, they are present, contingent rights in real property which may ripen, by successive steps, into a patent.[37] "Each of [the] steps, including the issuance of the patent, relates back and includes the original and primary location." [38] Thus, PRI, as a locator of state-selected lands, acquired mining rights at the time of location.

Because the commissioner, acting within his authority,[39] was entitled to find that PRI was not qualified to conduct business in Alaska and thus not qualified to acquire mining rights under AS 38.05.190(a), his decision voids and nullifies PRI's mining rights.

### C. The Superior Court Did Not Abuse Its Discretion in Awarding Costs and Attorney Fees.

Moore also argues that because the superior court erred in its determination that the state and ACNC had prevailed on the merits, it erred in awarding costs and attorney fees against PRI. Because we affirm the decisions of the commissioner and lower court, we affirm the award of attorney fees.

33. *See id.*

34. *See* AS 38.05.275; *see also* 11 AAC 86.115(b).

35. *See* AS 27.10.050; AS 38.05.195.

36. *See* AS 27.10.050; AS 38.05.195.

37. *See Kile v. Belisle*, 759 P.2d 1292, 1294 n. 9 (Alaska 1988) (holding state claimant had no possessory interest in location on state-selected land where the conveyance had not received

### V. CONCLUSION

The commissioner was correct in finding that a locator on state-selected land acquired mining rights at the time of location. These rights were susceptible to nullification for the locator's failure to qualify to locate mining claims in the state. We therefore AFFIRM the superior court's decision.

tentative approval from BLM, but rather had gained priority rights against subsequent locators that matured into a right of exclusive possession upon BLM's tentative approval); *see also Garside v. Norval*, 1 Alaska 19, 23 (D.Alaska 1888).

38. *Garside*, 1 Alaska at 23.

39. *See* AS 38.05.020.